COMMONWEALTH of Pennsylvania,
Appellee

v.

George Vincent KUBIS, Appellant.

Superior Court of Pennsylvania.

Submitted April 6, 2009.
Filed July 21, 2009.

Peter C. Hall, Public Defender, Doylestown, for appellant.

Michelle A. Henry, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

BEFORE: LALLY–GREEN, BENDER and FITZGERALD *, JJ.

OPINION BY BENDER, J.:

¶ 1 George Kubis (Appellant) was found guilty of robbery and related charges by a jury on March 13, 2008 and was sentenced to twenty-five to fifty years' imprisonment. On appeal, Appellant contends that there was insufficient evidence to convict him of robbery, that denial of his motions to suppress physical evidence and identification evidence was improper, and that irrelevant evidence was improperly admitted at trial. After review, we affirm.

¶ 2 At approximately 8:10 a.m. on August 23, 2007, Appellant entered Mr. Stencler's hair salon wearing a black bandana, sunglasses, and black clothing. Appellant demanded that Stencler give him all his money and then hit him in the head with his palm. After Stencler emptied the cash register, Appellant threatened to stab Stencler if he did not give Appellant the rest of the money in the store. Stencler then led Appellant to the salon's safe. As Stencler struggled with the safe's combination, Appellant stated, "If you don't open that safe in the next two seconds, I am going to run a knife through you." N.T., 3/12/08, at 8. After Stencler handed over the money, Appellant instructed Stencler to stay down and threatened to beat him.

¶ 3 Appellant then turned to leave the salon, ripping a ringing phone off the wall as he exited. Stencler did not have a clear view of the vehicle Appellant fled in, but believed it was dark in color. After Appellant left, Stencler called 911 from another phone in the salon.

¶ 4 Detective John Schlotter of the Warminster Township Police Department spoke with Glen Ockenhouse, an employee of the bank located in the same shopping center as Stencler's salon. Ockenhouse arrived at work during the robbery and witnessed a dark colored Jeep Cherokee parked next to the hair salon. He stated that the driver, a man in a black bandana and sunglasses, exited the Jeep and entered the salon. Ockenhouse was also able to provide Detective Schlotter with video footage from the bank surveillance camera which showed a dark vehicle resembling a Jeep driving through the bank parking lot.

¶ 5 Detective Schlotter then received a tip from the Horsham Township Police

* Former Justice specially assigned to the Superior Court.

Department indicating that Appellant had recently been released from prison after serving time for two armed robberies involving a knife, and had been spotted in a Jeep that matched the description given by Ockenhouse and seen on the bank video.

¶ 6 Detective Schlotter proceeded to Appellant's apartment, where he found a Jeep Cherokee similar to the one viewed on the bank surveillance video. Inside, police saw a black bandana, two folding knives, and a box cutter. After questioning Appellant, officers seized the Jeep. During the seizure, Appellant attempted to remove the car from the premises, but was not permitted to do so. A later search of the Jeep pursuant to a warrant revealed sunglasses and a pair of gloves in its passenger compartment.

¶ 7 Detective Schlotter then used computer software to compile a photo lineup. The detective selected seven photos of balding men with light complexions, mustaches, and blue eyes to match Appellant's general appearance. From the assembled array, Stencler selected photos of Appellant and one other man.

¶ 8 Based on the foregoing, the Commonwealth arrested Appellant and charged him with robbery and related offenses. Appellant filed a motion to suppress the evidence found in his Jeep, claiming that the police violated the Fourth Amendment when they seized it. The trial court denied the motion and following a jury trial, Appellant was convicted of robbery under 18 Pa.C.S. §§ 3701(a)(ii), 3701(a)(iii), respectively.[1] Appellant then filed this appeal raising four questions for our review:

A. Did the trial court err in denying Appellant's motion to suppress evidence obtained from the seizure and search of Appellant's vehicle?

B. Did the trial court err by admitting irrelevant evidence of knives and black gloves that were found in Appellant's vehicle?

C. Did the trial court err in denying Appellant's motion to suppress identification evidence?

D. Was the evidence presented at trial sufficient to sustain the convictions as to robbery, [a] felony of the first degree?

Brief for Appellant at 4.

¶ 9 We first consider Appellant's claim that the trial court erred in denying his motion to suppress the evidence seized from the Jeep. In reviewing a denial of suppression, this Court is "bound by the factual findings of the suppression court that are supported by the record, but we are not bound by its conclusions of law." *Commonwealth v. Gaul*, 590 Pa. 175, 912 A.2d 252, 254 (2006).

¶ 10 In his brief, Appellant contends that the police seizure of his Jeep was improper, as they had neither probable cause nor a warrant, and there were no exigent circumstances surrounding the seizure. Brief for Appellant at 12–13. Appellant frames his argument under Article I, Section 8 of the Pennsylvania Constitution, which provides protections that are either coterminous with or greater than those of the Fourth Amendment of the United States Constitution. *See Commonwealth v. Perry*, 568 Pa. 499, 798 A.2d 697, 700 n. 4 (2002).

¶ 11 The United States Supreme Court has held that when police have probable cause to obtain a warrant and exigent circumstances exist, police are authorized to secure a suspect's dwelling place while a

1. Appellant was also charged with two lesser graded counts of robbery, theft, terroristic threats, and simple assault. The two robbery convictions merged at sentencing, and no further penalty was imposed for any of the remaining three charges.

warrant is obtained. *See Illinois v. McArthur*, 531 U.S. 326, 328, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001); *Segura v. United States*, 468 U.S. 796, 811–12, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

¶ 12 In *Segura*, police arrested the defendants in their apartment for drug trafficking. *Segura*, 468 U.S. at 800, 104 S.Ct. 3380. While waiting for a warrant to be issued, the police seized the apartment from the inside. *Id.* at 801, 104 S.Ct. 3380. They retained possession of the apartment overnight for a total of nineteen hours, then searched it pursuant to a valid warrant. *Id.* The United States Supreme Court held that this seizure was permissible under the Fourth Amendment as the police had probable cause to believe that there was cocaine and drug paraphernalia in the apartment and the seizure did not interfere with the defendants' possessory interest because they were in police custody. *Id.* at 810–11, 104 S.Ct. 3380.

¶ 13 This line of reasoning was extended in *McArthur*, where police knocked on McArthur's door with probable cause to believe he had drugs inside, but no warrant to search. *McArthur*, 531 U.S. at 329, 121 S.Ct. 946. When McArthur denied access to police, an officer went to obtain a warrant while another secured the trailer by telling the defendant he could not re-enter without police supervision. *Id.* The Court held that given the nature of the police interest in securing evidence, the brief seizure of McArthur's property did not violate the Fourth Amendment. *Id.* at 331, 121 S.Ct. 946.

¶ 14 The Pennsylvania Supreme Court adopted this reasoning in *Commonwealth v. Gillespie*, 573 Pa. 100, 821 A.2d 1221 (2003), and stated the *McArthur* factors as follows:

> (1) the police had probable cause to believe the suspect's home contained evidence of a crime and contraband; (2) the

police had good reason to fear that, unless restrained, the defendant would destroy the evidence before they returned with a warrant; (3) the police made reasonable efforts to balance the interests of law enforcement with those of privacy; and (4) the restraint imposed was limited in time and scope.

*Id.* at 1227. The court held that a temporary seizure of a dwelling place does not violate Article I, Section 8 of the Pennsylvania Constitution when the above four factors are satisfied. *Id.* In *Gillespie*, police responded to a call that the defendant was in unlawful possession of a firearm. *Id.* at 1223. Police knocked on the defendant's door and asked to search the home. *Id.* When the defendant denied them permission to search, police indicated that they would seize the home until a search warrant was obtained. *Id.* The Pennsylvania Supreme Court held that this seizure was proper, as police had probable cause to believe that the defendant possessed a firearm and reason to fear that he would destroy or use it before they returned with a warrant. *Id.* at 1227.

¶ 15 While the above cases relate to the seizure of a residence or house, we conclude the principle can be extended to automobiles, where the expectation of privacy is much lower. *See Commonwealth v. Rogers*, 578 Pa. 127, 849 A.2d 1185, 1191 (2004) (the expectation of privacy in an automobile is lower than that of the body); *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101, 106 (1978) (a person's expectation of privacy in an automobile is significantly lower than in his home or office). Applying this precedent in the context of an automobile seizure, we conclude that the circumstances surrounding the police seizure of Appellant's Jeep satisfy the four *McArthur* factors.

¶ 16 First, the police had probable cause to believe that the Jeep and the items it

contained had been used in the robbery, as the bandana matched eyewitness descriptions and the Jeep resembled the vehicle seen on the surveillance video. Second, the police had a reasonable fear that Appellant, knowing that he was under investigation, would seek to destroy the evidence were it not seized. Third, police balanced Appellant's privacy interest with the Commonwealth's interest in obtaining clearly incriminating evidence by seizing the vehicle, in which he had a lesser expectation of privacy than in his home, as well as obtaining a warrant before searching the vehicle. Fourth, the scope of the seizure was limited; police seized Appellant's vehicle, not his person or his place of dwelling. Accordingly, we hold that the police did not violate Appellant's constitutional rights when they seized the Jeep and did not search it until they obtained a warrant. Therefore, we conclude that the trial court did not err in denying Appellant's motion to suppress.

¶ 17 Appellant's second question on appeal is whether the knives and gloves found in his Jeep were improperly admitted at trial. Appellant contends that the knives and gloves recovered from the vehicle were irrelevant to the proceedings against him and therefore inadmissible. Brief for Appellant at 16. Pursuant to Ra.R.E. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Such evidence will be admissible at trial unless "its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403. When reviewing the trial court's decision to admit the knives and gloves found in the Jeep, we consider that "the admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Mitchell,* 588 Pa. 19, 902 A.2d 430, 455 (2006).

■ ¶ 18 We first address whether the knives were relevant to the charges Appellant was facing. While no knife was physically produced during the robbery, Appellant's threats indicated that he would stab Stencler with a knife. The knives recovered from Appellant's Jeep make the fact that he was the one who made this threat more probable, as actual possession of a knife increases the probability that Appellant would threaten to stab someone.

¶ 19 While this evidence is harmful to Appellant's defense, harm alone does not justify the exclusion of evidence at trial. *Commonwealth v. Dillon,* 592 Pa. 351, 925 A.2d 131, 141 (2007). Rather, Appellant must show that this evidence is so prejudicial that it would "inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Owens,* 929 A.2d 1187, 1191 (Pa.Super.2007). In his brief, Appellant states that "the probative value of Appellant's possession of knives, especially the 'switchblade' knife, was far outweighed by its unfair prejudice and should have been excluded on that basis as well." Brief for Appellant at 17. However, Appellant does not explain why he believes the evidence was prejudicial. Instead, he makes a single conclusory statement, hoping this Court will develop its own argument in support, which we decline to do. Moreover, we conclude the probative value of the knives far outweighed any unfair prejudice Appellant may have faced at trial due to their inclusion.

■ ¶ 20 We next address Appellant's contention that the trial court abused its

discretion when it permitted the admission of the black leather gloves found in Appellant's Jeep. The trial court ruled that the gloves would only be admissible if Appellant asserted that he was not the robber because his fingerprints were not found at the scene. Appellant does not challenge this ruling, but instead argues that the Commonwealth ran afoul of the ruling by raising the issue of fingerprints during its case in chief. Brief for Appellant at 16. We have reviewed the record, and conclude that Appellant has mischaracterized the events at trial. It is true that when questioned by the Commonwealth, Detective Schlotter indicated that the police had processed the crime scene, which included dusting for latent fingerprints. N.T., 3/12/08, at 49. However, the mention of fingerprints was ancillary to the Commonwealth's question, and Appellant's fingerprints, much less the lack thereof, were not mentioned by the prosecutor nor by Detective Schlotter during direct examination. Rather, the topic of Appellant's prints was broached first by defense counsel. During cross examination of Detective Schlotter, defense counsel asked the detective whether Appellant's prints were found at the scene and whether the victim had reported that the robber was wearing gloves. N.T., 3/12/08, at 115–17. It was only upon the mention of Appellant's fingerprints that the gloves became admissible, and that threshold was crossed by Appellant's counsel, not the Commonwealth. Consequently, we hold that the trial court properly admitted the black gloves into evidence to allow the Commonwealth to rebut the lack of fingerprint evidence.[2]

¶ 21 In his third question for review, Appellant presents a claim that the trial court improperly denied Appellant's motion to suppress identification evidence. The crux of Appellant's argument on this point rests on the allegation that the line-up was suggestive to the point of creating a likelihood of misidentification. Brief for Appellant at 19. We find this claim meritless. When determining the admissibility of identification testimony, this Court has held that

> suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but "suggestiveness alone does not warrant exclusion." A pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate that the identification procedure was so infected by suggestiveness "as to give rise to a substantial likelihood of irreparable misidentification."

*Commonwealth v. Bruce,* 717 A.2d 1033, 1037 (Pa.Super.1998) (citation omitted).

¶ 22 In the instant case, we conclude that the circumstances surrounding Mr. Stencler's identification of Appellant were not suggestive. Appellant would have us find undue suggestiveness on three grounds: the selected photographs did not bear sufficient resemblance to Appellant's photograph; Appellant's eyes were not focused on the camera; and Detective Schlotter's comments to Stencler during the line up were suggestive. We disagree that any of these contentions entitle Appellant to relief.

¶ 23 Detective Schlotter chose pictures of men with the same basic identifying

---

2. Appellant also contends that the gloves were prejudicial to his case but again offers no argument in support of the claim. We have already expressed our unwillingness to furnish arguments to bolster Appellant's conclusory statements. Consequently, as Appellant presents no reasons why the trial court abused its discretion in admitting the black leather gloves, we must not disturb the lower court's determination.

features when he assembled the photo array; all were in some stage of balding with fair complexions, blue eyes, and mustaches. In his brief, Appellant relies on the allegation that only three of the men in the line up had round faces like Appellant. In its opinion, the trial court stated,

> Although some of the faces in the line-up appear longer than Appellant['Js, it cannot be said that five of the seven other faces are strikingly longer than Appellant's so as to create suggestivity. The similar characteristics between all eight men in the line-up outweigh any difference in the length of their faces.

Trial Court Opinion (T.C.O.), 10/31/08, at 12. After reviewing the photographs, we agree that the trial court did not err in its determination on this matter.

¶ 24 Second, Appellant argues that the photo array was somehow unduly suggestive because his photo shows him looking away from the camera. In the picture, Appellant's head is facing forward, providing a frontal view of his face that matches that of the rest of the photos. His eye position is not readily distinguishable from the eye positions of the men in the other images, and even if it were, such a discrepancy would not create a substantial likelihood of misidentification.

¶ 25 Third, we find that Detective Schlotter's comments to Mr. Stencler were not suggestive. Appellant contends that he is entitled to relief because Detective Schlotter told Stencler that the police had a suspect in mind before Stencler chose Appellant from the lineup. Appellant also contends that Detective Schlotter created a suggestive environment when, after Stencler had made his selections, the detective indicated that one of the two men Stencler chose was the suspect. However, Appellant makes no argument as to why these statements would create a substantial likelihood of misidentification. Accord-

ingly, we find the out-of-court identification was not suggestive, and the trial court properly denied Appellant's motion to suppress it.

¶ 26 Appellant next contends that the trial court erred in allowing Mr. Stencler's in-court identification into evidence because Mr. Stencler relied upon the allegedly suggestive photo array to identify Appellant during the trial. As we find the out-of-court identification was not suggestive, we hold that the trial court did not err in admitting Mr. Stencler's in-court identification of Appellant.

■ ¶ 27 In the fourth question presented for our review, Appellant claims that the evidence at trial was insufficient to convict him of robbery under 18 Pa.C.S. §§ 3701(a)(ii), 3701(a)(iii), respectively. The standard of review for sufficiency claims requires that an appellate court determine "whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses." *Commonwealth v. DeJesus*, 567 Pa. 415, 787 A.2d 394, 398 (2001). As a reviewing court, we may not "weigh the evidence and substitute our judgment for the fact-finder's." *Commonwealth v. Costa–Hernandez*, 802 A.2d 671, 675 (Pa.Super.2002). Additionally, "the question of any doubt regarding the facts and circumstances established by the Commonwealth is for the fact-finder to resolve unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id.*

¶ 28 Pursuant to 18 Pa.C.S. § 3701(a)(ii), "a person is guilty of robbery if, in the course of committing a theft, he: ... (ii) threatens another with or intentionally puts him in fear of immediate serious bodi-

ly injury." The law of this Commonwealth defines serious bodily injury as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Commonwealth v. Hopkins*, 747 A.2d 910, 915 (Pa.Super.2000). When reviewing a judgment under this subsection, this Court will look to the nature of the defendant's threats, and not to the subjective state of mind of the victim. *See Commonwealth v. Rodriquez*, 449 Pa.Super. 319, 673 A.2d 962, 966 (1996); *Commonwealth v. Ross*, 391 Pa.Super. 32, 570 A.2d 86, 87 (1990).

¶ 29 Appellant contends that because no knife was produced during the theft and Appellant's only physical contact with the victim was with his palm, a conviction pursuant to 18 Pa.C.S. § 3701(a)(ii) cannot stand. Brief for Appellant at 22. We disagree. While no knife was produced, Appellant made repeated verbal statements indicating he would stab Stencler if not given the money he demanded, such as "If you don't open that safe in the next two seconds, I am going to run a knife through you." N.T., 3/12/08, at 8. It is clear from his statements that Appellant threatened Stencler with physical harm in order to obtain money. Further, had Appellant carried out these threats, they would have amounted to serious bodily injury, as the type of knife wound threatened would almost surely cause "substantial risk of death … serious permanent disfigurement or protracted or impairment of the function of [a] body member or organ." *Hopkins*, 747 A.2d at 915.

¶ 30 Further, section 3701(a)(ii) need not be satisfied by the overt threat of serious bodily injury, but may be satisfied if the defendant intentionally puts another in fear of immediate serious bodily injury. In the instant case, we conclude that Appellant's conduct during the robbery placed his victim in fear of immediate serious bodily injury. When determining whether a victim has been placed in fear of serious bodily injury, this Court uses an objective standard; therefore, Mr. Stencler's subjective state of mind during the robbery is not dispositive. *See Rodriquez*, 673 A.2d at 966. However, we conclude that the nature of Appellant's threat to stab Mr. Stencler was such that a reasonable person in the victim's position would fear for his life or safety. When viewing the record in its entirety, we conclude that there was sufficient evidence for the trial court to find Appellant guilty under section 3701(a)(ii), as he threatened another with serious bodily injury, and a reasonable person would have taken that threat seriously.

 ¶ 31 Appellant also contends that the evidence was insufficient to convict him of robbery under 18 Pa.C.S. § 3701(a)(iii), which provides that a person is guilty of robbery if, during a theft, he "commits or threatens immediately to commit any felony of the first or second degree." In its opinion, the trial court concluded that Appellant had threatened to commit aggravated assault, which is graded as a first degree felony. T.C.O., 10/31/08, at 18; 18 Pa.C.S. § 2702(b). A person commits aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). As discussed above, stabbing a person with a knife in the manner threatened by Appellant constitutes serious bodily injury and thus aggravated assault. Consequently, Appellant's threat to stab Stencler with a knife constituted the threat of a first degree felony during a theft. Accordingly, we conclude that there is sufficient evi-

dence to sustain Appellant's conviction under section 3701(a)(iii).

¶ 32 Judgment of sentence affirmed.