J-S41029-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE VINCENT KUBIS, | : | |
| | : | |
| Appellant | : | No. 3347 EDA 2013 |

Appeal from the PCRA Order November 4, 2013,
Court of Common Pleas, Bucks County,
Criminal Division at No. CP-09-CR-0008943-2007

BEFORE:  BOWES, DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:　　　　　　　　　　**FILED AUGUST 12, 2014**

George Vincent Kubis ("Kubis") appeals from the November 4, 2013 order entered by the Bucks County Court of Common Pleas denying his motion filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA").  Following the submission of briefs in this appeal, counsel for Kubis filed a document in this Court entitled "Motion for Remand and Hearing to Assert Grounds for a New Trial on the Basis of Recent Pennsylvania Supreme Court Decision" ("Motion for Remand").  After careful review, we deny the Motion for Remand and affirm the PCRA court's order.

On appeal from Kubis' judgment of sentence, a prior panel of this Court summarized the facts of the case as follows:

> At approximately 8:10 a.m. on August 23, 2007, [Kubis] entered Mr. Stencler's hair salon wearing a black bandana, sunglasses, and black clothing. [Kubis] demanded that Stencler give him all his

money and then hit him in the head with his palm. After Stencler emptied the cash register, [Kubis] threatened to stab Stencler if he did not give [Kubis] the rest of the money in the store. Stencler then led [Kubis] to the salon's safe. As Stencler struggled with the safe's combination, [Kubis] stated, 'If you don't open that safe in the next two seconds, I am going to run a knife through you.' N.T., 3/12/08, at 8. After Stencler handed over the money, [Kubis] instructed Stencler to stay down and threatened to beat him.

[Kubis] then turned to leave the salon, ripping a ringing phone off the wall as he exited. Stencler did not have a clear view of the vehicle [Kubis] fled in, but believed it was dark in color. After [Kubis] left, Stencler called 911 from another phone in the salon.

Detective John Schlotter of the Warminster Township Police Department spoke with Glen Ockenhouse, an employee of the bank located in the same shopping center as Stencler's salon. Ockenhouse arrived at work during the robbery and witnessed a dark colored Jeep Cherokee parked next to the hair salon. He stated that the driver, a man in a black bandana and sunglasses, exited the Jeep and entered the salon. Ockenhouse was also able to provide Detective Schlotter with video footage from the bank surveillance camera which showed a dark vehicle resembling a Jeep driving through the bank parking lot.

Detective Schlotter then received a tip from the Horsham Township Police Department indicating that [Kubis] had recently been released from prison after serving time for two armed robberies involving a knife, and had been spotted in a Jeep that matched the description given by Ockenhouse and seen on the bank video.

Detective Schlotter proceeded to [Kubis'] apartment, where he found a Jeep Cherokee similar to the one viewed on the bank surveillance video. Inside, police

saw a black bandana, two folding knives, and a box cutter. After questioning [Kubis], officers seized the Jeep. During the seizure, [Kubis] attempted to remove the car from the premises, but was not permitted to do so. A later search of the Jeep pursuant to a warrant revealed sunglasses and a pair of gloves in its passenger compartment.

Detective Schlotter then used computer software to compile a photo lineup. The detective selected seven photos of balding men with light complexions, mustaches, and blue eyes to match [Kubis'] general appearance. From the assembled array, Stencler selected photos of [Kubis] and one other man.

Based on the foregoing, the Commonwealth arrested [Kubis] and charged him with robbery and related offenses. [Kubis] filed a motion to suppress the evidence found in his Jeep, claiming that the police violated the Fourth Amendment when they seized it. The trial court denied the motion and following a jury trial, [Kubis] was convicted of robbery under 18 Pa.C.S. §§ 3701(a)(ii), 3701(a)(iii), respectively.[FN]

_____

[FN] [Kubis] was also charged with two lesser graded counts of robbery, theft, terroristic threats, and simple assault. The two robbery convictions merged at sentencing, and no further penalty was imposed for any of the remaining three charges.

*Commonwealth v. Kubis*, 978 A.2d 391, 392-93 (Pa. Super. 2009).

Kubis filed a direct appeal to this Court and on July 21, 2009, we affirmed his judgment of sentence. Kubis did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On August 17, 2009, Kubis filed a timely *pro se* PCRA petition. The PCRA court appointed counsel and scheduled a hearing on the petition. At the hearing scheduled on May 5, 2011, the PCRA court continued the matter

- 3 -

for counsel to further consult with Kubis and file an amended PCRA petition. Counsel filed the amended PCRA petition on April 23, 2013. The PCRA court held a hearing on May 20, 2013, at which Kubis, his trial counsel, the trial prosecutor, and two members of the Warminster Township Police Department – Detectives Schlotter and Bonargo – testified. Following the hearing and the submission of briefs by the parties, the PCRA court denied Kubis' requested relief.

Kubis filed a timely notice of appeal followed by a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Kubis raises one issue for our review:

> The [p]rosecution's deliberate and premeditated decision to conceal from the defense before trial a portrait of the person who committed the robbery made pursuant to a description of a witness deprived [Kubis] of his right to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1 and 9 of the Pennsylvania Constitution, as well as Pa.R.Crim.Pro. 573.

Kubis' Brief at 11.[1]

---

[1] This issue is taken from the argument section of Kubis' appellate brief, as it was not included in his statement of questions involved. The speedy trial issue specified in his statement of questions involved – the only issue raised therein – does not appear in the argument made on appeal and bears no relation to the record of the proceedings below. However, because Kubis included the specific question to be addressed in the argument section of his appellate brief and in his concise statement of errors complained of on appeal, we will address the issue on its merits. *See Commonwealth v. Long*, 786 A.2d 237, 239 n.3 (Pa. Super. 2001) *aff'd,* 572 Pa. 690, 819 A.2d 544 (2003); *but see* Pa.R.A.P. 2116(a) ("No question will be considered

Prior to addressing the merits of the issue raised, we first address Kubis' Motion for Remand. On June 26, 2014, while the appeal was pending before this Court, Kubis filed a Motion for Remand, seeking for the case to be remanded so that he can file a PCRA petition based upon the Pennsylvania Supreme Court's decision in *Commonwealth v. Walker*, __ A.3d __, 2014 WL 2208139 (Pa. May 28, 2014). In *Walker*, our Supreme Court held "that the admission of expert testimony regarding eyewitness identification is no longer per se impermissible in our Commonwealth," *id.* at *22, which Kubis asserts "represents a break with prior case law, as such expert testimony would not have been admissible at [Kubis'] trial, which hinged largely on identification evidence of him as the person who robbed the victim." Motion for Remand, 6/26/14, at ¶ 5. The Commonwealth filed an answer opposing remand, stating that *Walker* is inapplicable to the case at bar. Answer to Motion for Remand and Hearing Filed June 26, 2014, 7/8/14, at ¶¶ 6-8. For the reasons that follow, we agree.

First, Kubis' PCRA petition would be untimely at this point. Section 9545(b)(1) requires a petitioner to file a PCRA petition within one year of the date the judgment became final. 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of

---

unless it is stated in the statement of questions involved or is fairly suggested thereby.").

Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

Here, Kubis' judgment of sentence became final on August 20, 2009 – 30 days after this Court affirmed his judgment of sentence on direct appeal. *See* Pa.R.A.P. 1113(a) (A petition for allowance of appeal to the Pennsylvania Supreme Court must be filed within 30 days of the entry of the Superior Court order to be reviewed.). Thus, a PCRA petition filed on or after June 26, 2014 is facially untimely, rendering the PCRA court without jurisdiction to decide it on its merits.

Second, Kubis' request for remand pursuant to a limited exception to the timeliness requirements fails. His request is based upon 42 Pa.C.S.A. § 9545(b)(1)(iii) and (2), which state:

> **(b) Time for filing petition.—**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
>         *     *     *
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
>
> (2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

- 6 -

42 Pa.C.S.A. § 9545(b)(1)(iii), (2). Although Kubis timely filed his request within 60 days of the *Walker* decision, the holding in *Walker* is not a recognition of a new constitutional right. To the contrary, in a footnote accompanying the holding of the case, the *Walker* Court expressly declined to consider the appellant's constitutional claim regarding the right to present expert testimony. *Walker*, 2014 WL 2208139 at *22 n.12. Thus, this exception does not apply.

Finally, our review of the record comports with the Commonwealth's account that Kubis never requested to have an expert testify regarding the fallibility of eyewitness identifications. As such, there is no basis for remand in this case.

Turning to the question raised on appeal, this Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Davis*, 86 A.3d 883, 887 (Pa. Super. 2014). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id.*

The issue raised on appeal stems from the Commonwealth's failure, prior to trial, to provide Kubis or his council with a computer-generated image of the perpetrator of the robbery created by the police during an interview with the victim using a program called "Faces." Detective Bonargo created the picture using the computer software while interviewing the

victim, but never showed the image generated to the victim, as the only details on the picture provided by the victim were the bandana and sunglasses worn by the perpetrator, neither of which were reflected accurately because of a flaw with the Faces program. N.T., 5/20/13, at 60, 75, 85. According to Kubis, the failure to provide the image to trial counsel prior to trial constituted a **Brady**[2] violation and a violation of the mandatory discovery provision contained in Rule of Criminal Procedure 573, as the image created looked nothing like him and could have been used in support of his misidentification defense. Kubis' Brief at 11-13. The PCRA court found that there was no violation of **Brady** or Rule 573, as (1) Detective Schlotter testified at the suppression hearing in this case regarding the existence of the computer-generated image, and (2) Kubis cannot demonstrate that the computer-generated image would have changed the outcome of the case. PCRA Court Opinion, 2/14/14, at 8.

We begin with the **Brady** claim. In **Brady v. Maryland**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87. This holding has been adopted by our Supreme Court, which set forth the standards for establishing a **Brady** violation as follows: "[A] defendant must

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

show that: (1) the evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence at issue is favorable to the defendant; and (3) the evidence was material, meaning that prejudice must have ensued." *Commonwealth v. McGill*, 574 Pa. 574, 583, 832 A.2d 1014, 1019 (2003) (citations omitted).

The record reflects that the following exchange took place between Kubis' counsel and Detective Schlotter at the suppression hearing:

> Q. At no time did you ever make any effort with anyone in your department to go to Mr. Stencler and work on a composite sketch based on his description or have Mr. Stencler look through mug books or whatever you could come up with based on his description, at no time did you do anything like that; is that right?
>
> A. I had Detective Bonargo create a Faces mug shot, I guess you would call it.
>
> Q. He did that without you questioning —
>
> A. He did that and he used the description in writing from the victim. But no, there was no need to do that based on the information that I had received.
>
> Q. So what you're saying is Detective Bonargo did use some sort of whatever you just described computer composite but you never used that, nobody ever used it, right?
>
> A. We didn't use it because it wasn't able to accurately depict the descriptive components that were given to us by the victim and the witnesses. In other words, the program was limited in what it was able to do, and the photo that we were able to generate was not realistic based on the descriptions that we had received.

N.T., 3/10/08, at 55-56. Counsel for Kubis did not ask Detective Schlotter any further questions regarding the computer-generated image or follow up with the Commonwealth to request a copy of the image.

At the PCRA hearing, trial counsel testified that he asked the question of whether police had a composite sketch drawn, expecting the answer to be "no." N.T., 5/20/13, at 28. When Detective Schlotter testified that the police had in fact attempted to do a composite sketch, trial counsel operated under a "mistaken assumption [that] he was referring to" photographs provided in discovery, and thus made no further inquiries about the image. *Id.*

"There is no **Brady** violation when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question[.]" **Commonwealth v. Chamberlain**, 30 A.3d 381, 409-10 (Pa. 2011) (citations omitted). As Kubis was aware that the police attempted to create a computer-generated image of the robbery suspect based upon a description given by the victim in this case and failed to exercise reasonable diligence to obtain the image from the Commonwealth, we find no fault with the PCRA court's conclusion that no **Brady** violation occurred.

Turning to the Rule 573 claim, the portions of the Rule Kubis asserts the Commonwealth violated by failing to turn over the computer-generated drawing state:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

* * *

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth[.]

Pa.R.Crim.P. 573(B)(1)(a), (d), (e).

At the outset, we find that subsection (e) is inapplicable to the evidence before us because there is nothing in the record to support (nor does Kubis argue) that the computer-generated image at issue was the result of a scientific test, expert opinion, polygraph examination, or other examination of Kubis. The record further reflects that it was neither material to Kubis' guilt nor an identification of Kubis. Rather, the record reflects that

- 11 -

Detective Bonargo testified that he created the image while talking to the victim in this case, but the victim did not see the image or adopt it as being an accurate depiction of the perpetrator. N.T., 5/20/13, at 75. The only information provided by the victim was that the perpetrator was wearing a black bandana and sunglasses; Detective Bonargo filled in the remaining features of the perpetrator's face so that there was an actual image to view – otherwise, it would only have been a picture of a bandana and sunglasses. *Id.* at 75, 85. In short, the computer-generated image was not a picture of the perpetrator as described by the victim, was never seen by the victim, and was never adopted by the victim as resembling the perpetrator. Therefore, the image itself was not material to Kubis' guilt or even an identification of Kubis.

The decision of the PCRA court is supported by the evidence and is free of legal error. *Davis*, 86 A.3d at 887. We therefore affirm its decision.

Motion for Remand denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2014