J-A29042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
     Appellee :
:
     v. :
:
GEORGE VINCENT KUBIS, :
:
     Appellant : No. 482 EDA 2017

Appeal from the PCRA Order December 22, 2016,
in the Court of Common Pleas of Bucks County,
Criminal Division at No(s): CP-09-CR-0008943-2007

BEFORE: LAZARUS, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:      **FILED DECEMBER 04, 2017**

George Vincent Kubis (Appellant) appeals *pro se* from the order

dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA),

42 Pa.C.S. §§ 9541-9546. We affirm.

> At approximately 8:10 a.m. on August 23, 2007, Appellant entered [the victim's] hair salon wearing a black bandana, sunglasses, and black clothing. Appellant demanded that [the victim] give him all his money and then hit him in the head with his palm. After [the victim] emptied the cash register, Appellant threatened to stab [the victim] if he did not give Appellant the rest of the money in the store. [The victim] then led Appellant to the salon's safe. As [the victim] struggled with the safe's combination, Appellant stated, "If you don't open that safe in the next two seconds, I am going to run a knife through you." After [the victim] handed over the money, Appellant instructed [the victim] to stay down and threatened to beat him.
>
> Appellant then turned to leave the salon, ripping a ringing phone off the wall as he exited. [The victim] did not have a clear

---

* Retired Senior Judge assigned to the Superior Court.

view of the vehicle Appellant fled in, but believed it was dark in color. After Appellant left, [the victim] called 911 from another phone in the salon.

Detective John Schlotter of the Warminster Township Police Department spoke with Glen Ockenhouse, an employee of the bank located in the same shopping center as [the victim's] salon. Ockenhouse arrived at work during the robbery and witnessed a dark colored Jeep Cherokee parked next to the hair salon. He stated that the driver, a man in a black bandana and sunglasses, exited the Jeep and entered the salon. Ockenhouse was also able to provide Detective Schlotter with video footage from the bank surveillance camera which showed a dark vehicle resembling a Jeep driving through the bank parking lot.

Detective Schlotter then received a tip from the Horsham Township Police Department indicating that Appellant had recently been released from prison after serving time for two armed robberies involving a knife, and had been spotted in a Jeep that matched the description given by Ockenhouse and seen on the bank video.

Detective Schlotter proceeded to Appellant's apartment, where he found a Jeep Cherokee similar to the one viewed on the bank surveillance video. Inside, police saw a black bandana, two folding knives, and a box cutter. After questioning Appellant, officers seized the Jeep. During the seizure, Appellant attempted to remove the car from the premises, but was not permitted to do so. A later search of the Jeep pursuant to a warrant revealed sunglasses and a pair of gloves in its passenger compartment.

Detective Schlotter then used computer software to compile a photo lineup. The detective selected seven photos of balding men with light complexions, mustaches, and blue eyes to match Appellant's general appearance. From the assembled array, [the victim] selected photos of Appellant and one other man.

Based on the foregoing, the Commonwealth arrested Appellant and charged him with robbery and related offenses.

***Commonwealth v. Kubis***, 978 A.2d 391, 392–93 (Pa. Super. 2009) (internal

citations omitted).

- 2 -

Prior to trial, Appellant filed a motion to suppress concerning, *inter alia*, the victim's identification of Appellant after viewing the photo array. After a hearing, the trial court denied the motion. On March 13, 2008, a jury found Appellant guilty of charges related to the robbery, and Appellant was sentenced to an aggregate term of 25 to 50 years of incarceration. On July 21, 2009, this Court affirmed Appellant's judgment of sentence, **Kubis**, 978 A.2d at 399, and Appellant did not file a petition for allowance of appeal to our Supreme Court.

On August 17, 2009, Appellant *pro se* filed timely a PCRA petition. Counsel was appointed, and after a hearing, the PCRA court denied Appellant's petition on November 4, 2013. Appellant filed a notice of appeal to this Court, and this Court affirmed the denial of the PCRA petition on August 12, 2014. The primary issue in that appeal concerned

> the Commonwealth's failure, prior to trial, to provide [Appellant] or his [counsel] with a computer-generated image of the perpetrator of the robbery created by the police during an interview with the victim using a program called "Faces." According to [Appellant], the failure to provide the image to trial counsel prior to trial constituted a **Brady** [**v. Maryland**, 373 U.S. 83 (1963),] violation and a violation of the mandatory discovery provision contained in Rule of Criminal Procedure 573, as the image created looked nothing like [Appellant] and could have been used in support of his misidentification defense. The PCRA court found that there was no violation of **Brady** or Rule 573, as (1) Detective Schlotter testified at the suppression hearing in this case regarding the existence of the computer-generated image, and (2) [Appellant] cannot demonstrate that the computer-generated image would have changed the outcome of the case.

- 3 -

*Commonwealth v. Kubis*, 106 A.3d 157 (Pa. Super. 2014) (unpublished memorandum at 3) (internal citations omitted).

On appeal, this Court agreed that there was no **Brady** violation because Appellant "was aware that the police attempted to create a computer-generated image of the robbery suspect based upon a description given by the victim in this case and failed to exercise reasonable diligence to obtain the image from the Commonwealth." *Id*. at 4. In addition, this Court held that there was no violation of the mandatory discovery rule because "the computer-generated image was not a picture of the perpetrator as described by the victim, was never seen by the victim, and was never adopted by the victim as resembling the perpetrator." *Id*. at 5. Thus, this Court affirmed the denial of Appellant's PCRA petition. *Id*. at 12. Appellant filed a petition for allowance of appeal to our Supreme Court, which was denied on January 29, 2015. *Commonwealth v. Kubis*, 108 A.3d 34 (Pa. 2015).

On March 30, 2015, Appellant filed *pro se* the PCRA petition at issue in this appeal. Appellant conceded that his petition was filed untimely. **See** PCRA Petition, 3/30/2015, at 30. Nevertheless, he contended that his petition met the governmental-interference exception to the PCRA time bar. Thereafter, Appellant sought and was granted numerous extensions to file a memorandum of law in support of his PCRA petition. Appellant eventually filed a memorandum of law on October 6, 2016. In that memorandum, he further argued that this petition should be considered timely pursuant to both the

aforementioned governmental-interference exception as well as the newly-discovered fact exception. Memorandum of Law, 10/6/2016, at 27.

The Commonwealth responded, and on November 9, 2016, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing. Appellant did not file a response, and on December 22, 2016, the PCRA court dismissed Appellant's petition. Appellant filed a notice of appeal.[1] Both Appellant and the PCRA court complied with the mandates of Pa.R.A.P. 1925.

Before we can examine Appellant's substantive claims, we must determine whether the filing of his PCRA petition was timely. *See*, *e.g.*, *Commonwealth v. Lewis*, 63 A.3d 1274, 1280-81 (Pa. Super. 2013) (quoting *Commonwealth v. Chester*, 895 A.2d 520, 522 (Pa. 2006)) ("'[I]f a PCRA petition is untimely, neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims.'"). The PCRA sets forth the following with respect to timeliness.

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the

---

[1] Appellant's notice of appeal was due on January 21, 2017, but was not docketed with the PCRA court until January 27, 2017. However, Appellant has provided a cash slip dated January 19, 2017, showing the date he gave it to the prison authorities for mailing. *See* Response to Rule to Show Cause, 4/10/2017, at Exhibit A. "[T]he prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing." *Commonwealth v. Chambers*, 35 A.3d 34, 38 (Pa. Super. 2011). Thus, Appellant's notice of appeal is deemed to have been filed on January 19, 2017, and was therefore timely filed.

judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b).

Here, Appellant conceded his petition was filed outside the one-year time period for filing timely a PCRA petition. However, Appellant attempts to invoke the governmental-interference and newly-discovered facts exceptions. *See* 42 Pa.C.S. § 9545(b)(1)(i) and (ii).

While it is somewhat difficult to decipher Appellant's exact argument as to why these exceptions apply, it appears that he is concerned primarily with the handling of his prior PCRA petition. He claims that the PCRA court should have permitted him to proceed *pro se* and addressed the *pro se* motions he

filed.[2] See Appellant's Brief at 21-24. He goes on to argue that had he been permitted to proceed *pro se*, the outcome of his prior PCRA petition would have been different. *Id*. at 24. Appellant contends that after he learned additional information about the computer-generated image during his prior PCRA hearing, he "took his own measures and contacted the proprietor of the tech company." *Id*. at 30. According to Appellant, the information he learned from the company revealed that testimony provided by the Commonwealth "was both 'false & misleading.'" *Id*. Appellant suggests that the issues created by this computer-generated image, including the Commonwealth's failure to disclose it and counsel's failure to investigate it, satisfy the timeliness exceptions. Moreover, he asserts the outcome would have been different "had [he] been represented by counsel whom [*sic*] conducted more than a perfunctory review/investigation." *Id*. at 35.

---

[2] The record reveals that on May 7, 2012, Appellant filed a motion to proceed *pro se* alleging that appointed counsel was not adequately investigating Appellant's claims. **See** Motion For Leave To Proceed From A *Pro Se* Standing, 5/7/2012. A PCRA hearing was held on May 20, 2013. At that hearing, the Commonwealth represented that a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), was held on July 24, 2012, where Appellant agreed to proceed with appointed counsel. **See** N.T., 5/20/2013, at 6.

After numerous delays, as well as additional *pro se* filings, Appellant *pro se* filed a motion for appointment of new counsel on December 17, 2012. Appellant also filed a motion to proceed *pro se* once again. However, at the May 20, 2013 PCRA hearing, Appellant did not object to being represented by appointed counsel, and further clarified that stance at the close of the hearing. *Id*. at 118. However, less than a month after the PCRA court denied Appellant relief, Appellant *pro se* filed a petition opposing representation by appointed counsel. The record does not reveal what happened to that motion, but appointed counsel did represent Appellant in that appeal.

At the outset, we observe that "[i]t is well settled that allegations of ineffective assistance of counsel will not overcome the jurisdictional timeliness requirements of the PCRA." **Commonwealth v. Wharton**, 886 A.2d 1120, 1127 (Pa. 2005). Thus, no matter how creatively Appellant states his claims, to the extent he is claiming any or all prior counsel were ineffective, he cannot satisfy an exception to the PCRA time bar. We have held specifically that allegations of ineffective assistance of court-appointed counsel in a timely-filed PCRA petition do not satisfy the governmental-interference exception. **See Commonwealth v. Pursell**, 749 A.2d 911, 916 (Pa. 2000) ("[C]laims relating to ineffectiveness of counsel for failing to raise certain issues do not qualify due to the specific provision in 42 Pa.C.S. § 9545(b)(4) that the term 'government officials' does not include defense counsel."). In addition, the newly-discovered facts exception applies only to "newly discovered facts, not [for] a newly discovered or newly willing source for previously known facts." **Commonwealth v. Marshall**, 947 A.2d 714, 720 (Pa. 2008).

Based on the foregoing, Appellant has not convinced us that he has pled or proven any facts that satisfy an exception to the timeliness requirements of the PCRA. Therefore, the instant petition was untimely filed, and the PCRA court properly dismissed Appellant's petition for lack of jurisdiction. Thus, we affirm the PCRA court's December 22, 2016 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/4/2017</u>