821 A.2d 1221

COMMONWEALTH of Pennsylvania, Appellee

v.

**James L. GILLESPIE, Appellant.**

Supreme Court of Pennsylvania.

Argued May 16, 2002.

Decided April 25, 2003.

Sean Patrick McGraw, Deborah Lux, for Appellant, James L. Gillespie.

Ray Frank Gricar, Belllefonte, for Appellee, Com. of PA.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

JUSTICE EAKIN.

James Gillespie challenges his conviction under 18 Pa.C.S. § 6105 (persons not to possess, use, manufacture, control, sell or transfer firearms). He argues the shotgun he possessed did not fall within the definition of "firearm," and further

contends the shotgun was seized as the result of an unlawful search of his residence.

On August 8, 1999, Pennsylvania State Police received a complaint from a neighbor that appellant, a convicted felon, possessed a firearm. After verifying this information by checking appellant's criminal record, two uniformed officers interviewed the neighbor at his apartment, across the hall from appellant's residence. The neighbor stated he had seen appellant with a gun earlier that day.

At approximately 10:23 p.m., police knocked on appellant's door. When his wife answered, the officers asked to speak with appellant; she allowed the officers to enter. Inside, appellant, his wife, and two other people were present. The officers informed appellant about the complaint against him and invited him to discuss it outside. Appellant told the officers they could speak to him where they were. The officers told appellant there was a complaint he had been carrying a firearm earlier in the day, and asked if there was a firearm in the residence. Appellant, "[i]n a loud, vulgar manner," stated it was none of the officers' business whether he had a gun or not. N.T., 3/17/00, at 10. The officers then asked if they could search the residence. Appellant responded "not without a warrant," and told the officers to leave. One officer described Appellant's conduct as "violent and belligerent." Id.

The officers told appellant they were going to have to ask him, his wife, and his guests to leave the residence so the officers could secure it while a warrant was sought. Appellant "jumped up and started yelling and pointing his finger at [one officer's] face." Id., at 11. In response, the officer handcuffed him, and repeated he was going to get a warrant. With that, appellant stated there was a loaded gun in the bedroom. The other officer went to the bedroom and found a loaded 12–gauge shotgun with a 24–inch barrel just inside the door.

Appellant was charged with violating 18 Pa.C.S. § 6105(a). He filed a pretrial motion to suppress the evidence; the motion was denied. The trial court, sitting without a jury,

found appellant guilty. Appellant filed timely post trial motions, which were denied. The Superior Court affirmed. We granted allowance of appeal to resolve the differing definitions of "firearm" in 18 Pa.C.S. § 6105(i) and 18 Pa.C.S. § 6102, and to determine whether the shotgun was seized during an unlawful search.

Section 6105(a)(1) provides, "[a] person who has been convicted of an [enumerated] offense ... shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." Section 6105 contains the following definition of "firearm": "[a]s used in this section only, the term 'firearm' shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." Id., at § 6105(i) (emphasis added).

Section 6102 has a more restrictive definition of "firearm": [s]ubject to additional definitions contained in subsequent provisions of this subchapter which are applicable to specific provisions of this subchapter, the following words and phrases, when used in this subchapter shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

* * *

"Firearm." Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

Id., at § 6102 (emphasis added).

Appellant argues the Commonwealth did not prove his weapon was a "firearm," because his shotgun's barrel alone was 24 inches; under § 6102, a shotgun must have a barrel length of less than 18 inches, or an overall length of less than

26 inches, to be a "firearm." Appellant argues § 6105(i)'s broad definition of "firearm" merely enhances the definition in § 6102, and that § 6102's barrel length requirement still applies.

Appellant relies upon *Commonwealth v. Todd*, 477 Pa. 529, 384 A.2d 1215 (1978), in which this Court held barrel length was an essential element of the offense defined in § 6105. The version of § 6105 in effect when *Todd* was decided read: "No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control." 18 Pa.C.S. § 6105. Because this version of § 6105 did not define "firearm," this Court turned to § 6102's definition, which contained specific barrel length requirements.

In 1995, however, the General Assembly amended the Act. Section 6102's definition of "firearm" was amended to include the word "length" following the word "barrel," and § 6105 was completely rewritten to include its current definition of "firearm." Appellant argues the addition of the word "length" to § 6102 evinces the legislature's intent that barrel length remain an essential element of all firearms offenses, and asks this Court to interpret § 6105(i)'s definition as merely adding to § 6102's definition. However, § 6105(i) explicitly states its broader definition of "firearm" is to be ". . . used in this section only," which pertains to convicted criminals. Clearly the definition in § 6105 is there for a reason, which is to settle what a former convict may not possess.

■ The current version of § 6105 also expanded the class of convictions from "crime[s] of violence" to include certain potentially violent crimes. *See* 18 Pa.C.S. § 6105(b). The clear purpose of § 6105 is to protect the public from convicted criminals who possess firearms, regardless of whether the previous crimes were actually violent or the barrel of the firearm was a certain length. Indeed, during the legislative session regarding the bill which amended the Uniform Firearms Act, the following commentary was made:

[H]ighlights of this crime control proposal are as follows: It expands the categories of persons who commit a crime if they possess, use, control, sell, transfer, or manufacture any firearm, *long or short*, to include persons convicted of a range of violent or potentially violent crimes. . . .

Legis. J. House Special Session No. 1 (Pa. June 5, 1995), at 286 (emphasis added).

The broader definition of "firearm" in § 6105 was intended as a substitute for the narrower definition in § 6102, when dealing with possession by a convicted criminal. Section 6102 specifically states its definition of "firearm" is "[s]ubject to additional definitions contained in subsequent provisions of this subchapter. . . ." 18 Pa.C.S. § 6102. Merely adding § 6105's projectile/explosion requirement to § 6102, as appellant suggests, would be redundant, since any weapons with barrel lengths specified in that section are already capable of expelling a projectile by an explosive action. It must be presumed the legislature did not intend an absurd or unreasonable result. 1 Pa.C.S. § 1922(1); *Commonwealth v. Martorano*, 387 Pa.Super. 151, 563 A.2d 1229, 1232 (1989).

The definition of "firearm" in § 6105(i) includes any weapon capable of discharging a projectile by means of explosion, regardless of the weapon's barrel length. Because barrel length is no longer an essential element of the offense under § 6105, *Todd* and its progeny are not relevant to cases involving the revised statute. Accordingly, the evidence is sufficient to support appellant's conviction under § 6105.

■■■ Appellant next argues the trial court erred when it refused to suppress the shotgun. Voluntary consent to search is an exception to the general rule that a warrantless search of a residence is *per se* unreasonable. *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203, 206 (1994). When evaluating voluntariness of consent, the totality of the circumstances must be evaluated. *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 901 (2000). While there is no hard and fast list of factors evincing voluntariness, some considerations include: "1) the defendant's custodial status; 2) the use of duress or

coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel." *Commonwealth v. Cleckley*, 558 Pa. 517, 738 A.2d 427, 433 n. 7 (1999).

Appellant contends his consent was coerced by the officers.[1] When the officers arrived, appellant's wife admitted them voluntarily. Appellant was clearly aware of his rights, knew he could refuse consent to search, and in fact did refuse. There clearly was nothing coercive to this point, for the mere presence of police is not coercion.

Nor was there coercion thereafter. The officers told appellant they would seek a warrant; in order to secure the residence, they requested everyone wait outside while a warrant was sought. Appellant immediately became belligerent and aggressive, cursing at the officers and pointing his finger in their faces. This spontaneous outburst was in response to a legitimate act by the officers; securing the premises was an appropriate response to his exercise of his right to demand a warrant. That exercise, however, triggered the need to secure the premises, for obtaining a warrant takes time.

Legitimate police activity can hardly be coercion. By his belligerence, appellant talked himself into being handcuffed in order to secure him and the premises until a warrant could be obtained. The police did not try to bully him; it was the other way around. The fact he spontaneously blurted out the shotgun's location was not in response to any police threats or coercive tactics.

1. In his reply brief, appellant expands his challenge by alleging he was unlawfully seized by the police. Given his belligerent behavior and the crime involved, we cannot find that restraining appellant was unreasonable, much less unlawful; this restraint is only relevant as it impacts the evaluation of the voluntariness of his consent. Even if restraining appellant was the functional equivalent of an arrest, no single fact has talismanic significance, and custody alone does not render consent involuntary. *Commonwealth v. Smith*, 470 Pa. 220, 368 A.2d 272, 277 (1977).

Appellant argues *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) is applicable. In *Bumper*, the United States Supreme Court held consent to search a residence is invalid where it is given in response to police misrepresentation concerning the existence of a valid search warrant. Here, the officers merely stated they would get a warrant, not that they already had a warrant. This is not a case where police tried to coerce consent by threatening to get a warrant they otherwise could not get; based on the information from appellant's neighbor and the background check of appellant's criminal record, the officers had good reason to believe a convicted felon had a firearm there. *See Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985) (adopting probable cause test enunciated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983): probable cause exists if there is fair probability that contraband or evidence of crime will be found in particular place). The officers simply responded to appellant's initial refusal of consent with an accurate assessment of the situation: since appellant insisted on a warrant, they would have to secure the premises while a warrant was sought. Respecting appellant's rights does not comprise coercion.

The officers' request that appellant leave his home so it could be secured while they obtained a warrant is another factor which must be evaluated in examining the totality of the circumstances surrounding appellant's consent. The United States Supreme Court has held if probable cause exists to support the issuance of a warrant, police may secure the residence of an individual by having him wait outside his home to preserve the loss of evidence while a warrant is diligently sought. *See Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001).

In *McArthur*, police had probable cause to believe the defendant had drugs in his home, but no warrant. The defendant refused the officers entry when they knocked on his door, but came out onto the porch to speak with them. He was told by the officers that he could not reenter his home unless accompanied by an officer; he went back in several

times to obtain cigarettes and use the phone, each time being observed by an officer standing in the doorway. Two hours later, officers returned with a warrant, searched the home, and found drugs and paraphernalia. The defendant moved to suppress the evidence, and the trial court granted the motion. The Appellate Court of Illinois affirmed.

The United States Supreme Court reversed, holding the kind of temporary seizure at issue did not violate the Fourth Amendment's "central requirement" of "reasonableness." *Id.,* at 330, 121 S.Ct. 946. The Court concluded the seizure was reasonable, based upon the following circumstances: (1) the police had probable cause to believe the suspect's home contained evidence of a crime and contraband; (2) the police had good reason to fear that, unless restrained, the defendant would destroy the evidence before they returned with a warrant; (3) the police made reasonable efforts to balance the interests of law enforcement with those of privacy; and (4) the restraint imposed was limited in time and scope. *Id.,* at 331–33, 121 S.Ct. 946.

Here, unlike *McArthur,* the officers never actually restricted appellant's access to his home, for upon being told he would have to go outside while police obtained a warrant, appellant became belligerent, then blurted out the location of the weapon. While the Fourth Amendment permits the type of temporary seizure of the home at issue in *McArthur,*[2] Article I, § 8, the Pennsylvania Constitution's counterpart to the Fourth Amendment, "may be employed to guard individual privacy rights against unreasonable searches and seizures more zealously than the federal government does under the Constitution of the United States." *Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254, 1258 (1989); *see also Commonwealth v. Mason,* 535 Pa. 560, 637 A.2d 251, 256 (1993) (purpose of exclusionary rule under Fourth Amendment is to

2. *See also Segura v. United States,* 468 U.S. 796, 810, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) ("We hold, therefore, that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.").

deter police misconduct; purpose of exclusionary rule under Article I, § 8 is to protect implicit right to privacy in Pennsylvania); *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). Therefore, we must examine whether the officers' conduct violated Article I, § 8.

We conclude that, under the circumstances in the present case, the officers' acts were not unreasonable under the Pennsylvania Constitution. As we have already stated, the officers had good reason to believe appellant had a firearm in his home, and although this evidence was not as readily destructible as drugs, there was the more significant danger that appellant, in his agitated and violent state, could use the weapon. Therefore, telling appellant he would have to step outside until a warrant could be obtained was reasonable, to ensure the safety of the officers and the others in the home, and in the building. This was not a coercive tactic designed to procure appellant's consent; rather, it was a reasonable reaction to the aggressive behavior of a person suspected of illegally possessing a firearm.

The officers did not restrain appellant in order to coerce his consent; at this point, cooperation was clearly not in the cards, and asking him to leave and cuffing him could hardly be designed to inspire that cooperation. While appellant was restrained, the officers did not question him; they merely reiterated the premises had to be secured until a warrant was obtained. Appellant spontaneously stated the loaded gun was in the bedroom, which the officers reasonably understood as the grant of permission to enter that room and seize the gun. The fact appellant reacted in a way that necessitated his restraint while a warrant was sought does not render his subsequent statement involuntary.

Finally, the fact appellant knew the gun would eventually be discovered if a warrant was obtained does not vitiate his consent. This Court has rejected the argument that consent is involuntary simply because it is given at a time when the defendant knows a search will produce evidence of a

crime. *See Strickler,* at 901 (reasonable person standard presupposes an innocent person).

Thus, after assessing the totality of the circumstances, the suppression court did not err when it found appellant voluntarily gave the officers permission to search his bedroom for the firearm.

Judgment of sentence affirmed.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice NIGRO files a concurring and dissenting opinion.

Justice SAYLOR files a concurring and dissenting opinion in which Chief Justice CAPPY joins.

## JUSTICE NIGRO CONCURRING AND DISSENTING.

Like Justice Saylor, I join the majority's disposition on the issue involving the definition of a firearm under 18 Pa.C.S. § 6105(i). However, as I believe the police clearly violated Appellant's constitutional rights by ordering him to leave his own home while they obtained a search warrant, I simply cannot join that portion of the majority opinion that upholds the trial court's denial of Appellant's motion to suppress.

In reaching its conclusion that the officers' ordering of Appellant to leave his home was reasonable, the majority cites to *Illinois v. McArthur,* 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), which it contends stands for the broad proposition that "if probable cause exists to support the issuance of a warrant, police may secure the residence of an individual by having him wait outside his home to preserve the loss of evidence while a warrant is diligently sought." Slip Op. at 7. Importantly, however, *McArthur* involved a situation where the police prevented an individual from *re-entering* his home in order to prevent the destruction of evidence. Here, in contrast, the police were inside Appellant's home—despite the fact that they had no warrant and, by this point, had been instructed by Appellant to leave—when they told Appellant that he would have to *leave his own home* so that they could

secure a warrant. Indeed, *McArthur* itself implicitly recognizes the difference between a situation such as this, involving police action inside a home, and the situation presented by *McArthur*, where the police action occurred solely outside the home. *See id.* at 333–36, 121 S.Ct. 946. *See also Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (searches and seizures in public places are treated differently than those occurring inside the home).

In my view, once Appellant instructed the police to leave his home, the police no longer had any right to be in Appellant's home, and certainly had no right to order Appellant to leave his home while the police sought out a warrant. By holding otherwise, the majority turns on its head the long-standing precedent of this Court that the sanctity of the home is "the place deserving the utmost protection pursuant to the Fourth Amendment." *Commonwealth v. Gindlesperger*, 560 Pa. 222, 743 A.2d 898, 902 (1999); *Commonwealth v. Bricker*, 542 Pa. 234, 666 A.2d 257, 261 (1995) ("we have long recognized the sanctity of the home in this Commonwealth as we have repeatedly stated that upon closing the door to one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society") (internal quotation marks omitted); *Commonwealth v. Roland*, 535 Pa. 595, 637 A.2d 269, 270 (1994) (warrantless searches and seizures in private home are presumptively unreasonable). As I continue to believe that an individual is constitutionally entitled to be free from such unreasonable seizures in his home as that which occurred here, I would reverse the trial court's order denying Appellant's motion to suppress.

### JUSTICE SAYLOR, CONCURRING AND DISSENTING.

I join the majority opinion's analysis and disposition on the issue involving the definition of a firearm under Section 6105(i) of the Crimes Code, 18 Pa.C.S. § 6105(i). Concerning the assessment of the factors bearing upon the voluntariness of Appellant's consent to search, however, I do not believe that the majority affords sufficient weight to the coercive circumstances.

In this regard, I depart from the view that the presence of police and legitimate police activity, specifically, securing the premises and placing Appellant in custody, do not implicate a coercive dynamic. Indeed, the Court has acknowledged that there is an element of coercion that exists in non-custodial interactions between law enforcement officers and citizens. *See Commonwealth v. Strickler*, 563 Pa. 47, 73, 757 A.2d 884, 898 (2000) (citing *Commonwealth v. Jones*, 474 Pa. 364, 371–72, 378 A.2d 835, 839 (1977)). Such element is enhanced when coupled with custody. *See id.; see also Commonwealth v. Smith*, 470 Pa. 220, 228, 368 A.2d 272, 277 (1977) (recognizing that "[c]ustody, while not determinative in itself, places a heavy burden in showing consent was voluntarily given" and noting that "custody when coupled with other coercive factors[,] will normally necessitate the conclusion that the consent is not effective"). Of additional significance, in this case, the police stated that they were going to obtain the search warrant and ordered everyone to leave the residence. While these circumstances do not necessarily render Appellant's consent involuntary,[1] in my view, when coupled with custody, they should be accorded significance within the totality assessment.

At the same time, as the majority notes, there exist certain non-coercive circumstances, such as, the fact that the interaction with police occurred in Appellant's home, that he was aware of his right to refuse consent and, indeed, initially exercised such right. In addition, I would also distinguish the detention of Appellant in this case from those instances where the consent to search follows custody occurring in connection with a traffic stop, *see, e.g., Commonwealth v. Freeman*, 563 Pa. 82, 757 A.2d 903 (2000), or in the context of narcotics interdiction at an airport, *see, e.g., Commonwealth v. Mack*, 568 Pa. 329, 796 A.2d 967 (2002) (plurality opinion). Here, the detention would not have occurred but for Appellant's belligerent behavior. Nevertheless, on this record, I cannot conclude

---

1. *See generally* 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE. A TREATISE ON THE FOURTH AMENDMENT, § 8.2(c), at 651–54 nn. 74–88 (collecting cases and explaining that a threat to obtain a search warrant is not *per se* coercive).

that the consent resulted from an essentially free and unconstrained choice, as opposed to duress or coercion, express or implied, *see Strickler,* 563 Pa. at 79, 757 A.2d at 901; rather, Appellant's response to the threat to obtain a warrant, which he uttered while pinned against a couch with his arms handcuffed behind his back, more closely resembles acquiescence or submission.

Chief Justice CAPPY joins this concurring and dissenting opinion.