J-S20038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| MONROE YATES | : | |
| Appellant | : | No. 2936 EDA 2015 |

Appeal from the Judgment of Sentence July 22, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014350-2013

BEFORE: BOWES, J., OTT, J. and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.: **FILED OCTOBER 06, 2017**

Monroe Yates appeals from the judgment of sentence imposed on July 22, 2015, in the Court of Common Pleas of Philadelphia County following his conviction by jury on charges of attempted murder, conspiracy to commit murder, and various weapons offenses.[1] He received an aggregate sentence 20 to 40 years' incarceration. In this timely appeal, Yates claims the evidence was insufficient to support the verdict, the verdict was against the weight of the evidence, the trial court erroneously charged the jury regarding identification, and the trial court erroneously announced a stipulation to the jury. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

---

[1] 18 Pa.C.S. §§ 901(a), 1102(c), 6106(a)(1) and 6108.

We adopt the factual summary of this matter from the trial court opinion:

> On June 17, 2013, around nine o'clock in the evening, Lakeisha Jessie was with her sons Sahih Johnson and Jahih Yates in North Philadelphia. Sahih asked his mother if he could spend the night at a friend's house. When Lakeisha said no, Sahih called her a "bitch." After this disagreement, Lakeisha's nephew Robert Jackson walked by, and Lakeisha asked him to "beat up" Sahih for disrespecting her. Robert continued the physical confrontation with Sahih until Lakeisha told him to stop.
>
> Later that evening, Robert and Sahih encountered one another and began fighting again. Lakeisha then noticed that her son Jahih's father, [Monroe Yates (hereinafter, Yates)], was arguing with Robert as well. At this time Lakeisha called Robert's mother, her sister Kimberly Jessie, to pick up her son. When Lakeisha told [Yates] to leave Robert alone, he walked away towards Franklin Street.
>
> Kimberly Jessie was with friends nearby on 10th Street when Lakeisha called her. As she walked down 9th Street near Pike Street to find her son Robert, Kimberly passed [Yates] and [Biggs.[2]] She stopped to speak to [Yates] about the incident. While they were speaking, Kimberly's sons Robert, Raheim and Tyreek approached them. Raheim said, "Nobody is going to do anything. Nobody is going to touch my family." This made [Yates] and [Biggs] angry, and Kimberly walked them across the street. [Yates] and [Biggs] left together in a white vehicle.
>
> At approximately 10:30 that evening, Officers Dayton Bennett and Joseph Marion responded to a report of shots fired in the area of 9th and Pike Streets. The initial call reported five or six shots fired. Upon arrival, the officers found a group of around 20 people gathered in the area. They also saw Kimberly Jessie lying on the curb between Percy and Delhi Streets. She had been shot and was in distress, screaming "They tried to shoot my son. They tried to shoot my son. The mother f-ers tried to shoot my son." Kimberly testified that she was shot in the right thigh, and

---

[2] Mark Biggs, a/k/a Saladine Sweets, was Yates's co-defendant. His appeal was listed consecutively with this appeal.

that the bullet entered from the back and exited the front of her leg.

Lakeisha Jessie was also at the scene and spoke to Officer Marion when he arrived. Lakeisha identified [Yates] and [Biggs] as the shooters to Officer Marion at this time. Once Kimberly was transported to the hospital, Lakeisha was brought to East Detective's Division to make an official statement. Detectives Kahlan and Daley interviewed Lakeisha at about 11:35 PM. At this time, Lakeisha again identified [Yates] and [Biggs] as the individuals who had shot at her nephew, Raheim Jackson, and his mother Kimberly. She stated that she saw both men holding black handguns.

After being treated for her injuries, Kimberly Jessie was also interviewed by Detectives Kahlan and Daley that night. Detective Daley described her as "hysterical. She was in a lot of pain. She was upset, angry, a lot of emotions." Kimberly had brought the jeans she had been wearing to the detectives, who placed them on a property receipt. During this interview, Kimberly also identified [Yates] and [Biggs] as the shooters, and circled both of their pictures. She told detectives that she saw each man holding a handgun, one black and one silver. Although the interview was cut short due to the pain Kimberly was in, she was able to review and sign her statement that evening.

Detectives Ellis and McCullough processed the scene of the shooting to search for evidence. After an initial search of the area did not yield any results, they went to Temple University Hospital to speak to Kimberly Jessie, who was still being treated at that time. They learned that she had been shot closer to 9th Street, and returned to the scene to refocus their search. They discovered two fired cartridge casings east of 9th Street, in an area that had not been previously secured as part of the crime scene. The first casing was found under a Chevrolet Impala parked at the southeast corner of 9th and Pike Streets. The second casing was recovered from under a Toyota Corolla in the same area. The Toyota Corolla appeared to have a bullet hole in the hood. Both fired cartridge casings were of the same make and model. Firearms examiner Letitia Cannon examined the fired cartridge casings and concluded that they had been fired from the same firearm.

Another bullet went into the home of Della Jamison at 3900 North Delhi Street, at the corner of Pike Street. Ms. Jamison

testified that she had heard what sounded like gunshots that evening, and thought something may have hit her house. Upon going upstairs later that night, she found damage to a hat and perfume bottle. Officer Malcolm Scott investigated Ms. Jamison's house the next day when she reported the damage. In his report, Officer Scott noted that a "possible bullet went through the front bedroom wall, traveled through the middle bedroom, and is lodged in the bedroom wall."

On August 10, 2013, Sergeant Wali Shabazz was making an unrelated car stop at 10th and Butler Streets in the same neighborhood as the shooting and was approached by Kimberly Jessie. After finishing the car stop, Sergeant Shabazz walked over to Kimberly to speak with her. She told him that he should "be looking for the people that shot me," and that she was "scared for myself and my kids." Sergeant Shabazz asked her for the names of the men who shot her, and she responded with [Yates's] and [Biggs'] names.

Sergeant Shabazz found a warrant for [Yates], and went to the address listed at the 3900 block of Franklin Street. When [Yates] came to the door, Sergeant Shabazz, who was in full uniform, told him he was there to respond to a burglary alarm. When [Yates] replied that he did not have an alarm, Sergeant Shabazz excused himself and called for backup. When Sergeant Shabazz returned to the door, [Yates's] wife answered. [Yates] then tried to slam the door on Sergeant Shabazz and ran towards the back of the house. Sergeant Shabazz pursued him to the back door and was able to place [Yates] under arrest.

Sergeant Shabazz remained in touch with Kimberly Jessie regarding [Biggs], whose whereabouts were still unknown at the time. [Biggs] was not present in the City of Philadelphia, and was eventually apprehended by United States Marshalls (sic) on November 8, 2013.

Trial Court Opinion, 6/17/2016, at 2-5 (record citations omitted).

Relevant to this appeal, at trial, both Kimberly Jessie and her sister, Lakiesha Jessie, recanted their statements to the police and denied ever identifying Yates or Biggs as the assailants. Raheim Jackson, the apparent intended victim of the shooting, never cooperated with the authorities, telling

- 4 -

them only "some niggas were shooting and that's all I want to say,"[3] as well as this brief exchange:

> Police Detective: Your Mom was shot, don't you think you owe to her to cooperate and tell us what you can about the incident?
>
> Witness: My Mom had me arrested on the same day I was going to get a job with the school board so she wasn't looking out for me.

*Id*. at 3.

In his first issue, Yates claims there was insufficient evidence to support any of his convictions. His post-trial motion failed to specify what elements of any of the crimes were not proven. While this can result in waiver, here, the trial court did address certain aspects of insufficient evidence, thereby allowing for appellate review.[4] However, we will only review those issues that were addressed by the trial court's opinion, as "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Commonwealth v. McGriff*, 160 A.3d 863, 872 (Pa. Super. 2017) (citation omitted); Pa.R.A.P. 302. Accordingly, below we discuss the issues addressed by the trial court regarding sufficiency of the evidence.

---

[3] Commonwealth Exhibit 9, Police Interview, 6/18/2013, at 2.

[4] *See Commonwealth v. Tyack*, 128 A.3d 254 (Pa. Super. 2015) (vague Pa.R.A.P. 1925(b) statement can result in waiver); *Commonwealth v. Smith*, 955 A.2d 391 (Pa. Super. 2008) (en banc) (where trial court files an opinion meaningfully addressing vague Pa.R.A.P. 1925(b) statement, waiver may be avoided).

Initially, "A conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant had the specific intent to kill and took a substantial step towards that goal." *Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008) *citing* 18 Pa.C.S. §§ 901, 2502. Additionally, "It is well-settled that specific intent to kill can be established through circumstantial evidence such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Johnson*, 107 A.3d 52, 66 (Pa. 2014) (citations omitted). Such intent may also be proven through evidence the defendant fired multiple shots at the victim, even though none of the shots struck the victim in a vital organ. *See Commonwealth v. Manley*, 985 A.2d 252 (Pa. Super. 2009).

Here, the police statements of both Kimberly Jessie and Lakeisha Jessie identified Yates as one of the individuals shooting at Raheim Jackson, and multiple witnesses, including the Jessie sisters, reported hearing the assailants fire between four and six shots each at Raheim Jackson and his mother, Kimberly Jessie. Additionally, the police found two spent shell casings, both of which came from the same gun, in the immediate area of the shooting. Moreover, there was evidence the shootings took place following a confrontation between Jackson and Yates, ending with Yates and Biggs chasing Jackson down the street while firing at him. In view of the foregoing,

we agree with the trial court there was sufficient evidence to support a finding of guilt regarding attempted murder.[5]

Next, the trial court determined there was sufficient evidence to support the verdicts on the firearms charges, 18 Pa.C.S. §§ 6105, 6106, and 6108.[6] The trial court noted that it was stipulated that Yates was not eligible to possess a firearm under § 6105. Because Yates could not obtain a license for a firearm, pursuant to § 6105, and there was no question the incident took place in Philadelphia, the open question was simply whether Yates had a firearm in his possession. The trial court noted that both Kimberly Jessie and Lakeisha Jessie gave statements to the police that Yates had a handgun in his possession. That fact, coupled with spent shell casings at the shooting scene, and additional testimony confirming shots were heard at the relevant time,

---

[5] In his appellant's brief, Yates also argued the Commonwealth failed to argue the applicability of transferred intent in this case. Transferred intent is relevant if one believes that Raheim Jackson was the intended target of the shooting, but his mother was inadvertently struck. We note the trial court instructed the jury regarding transferred intent without objection from either of the defendants. *See* N.T. Trial, 1/28/2013, at 20-21. Additionally, the argument is waived as that specific claim was not raised before the trial court and was not addressed by the trial court in its trial court opinion. A defendant may not raise an issue for the first time on appeal. *McGriff*, *supra*.

[6] Persons not to possess a firearm, firearms not to be carried without a license, and carrying firearms in public in Philadelphia, respectively.

provide sufficient evidence to support the convictions on the firearms charges.[7]

In view of the above, Yates is not entitled to relief on his claim of insufficient evidence.

Next, Yates argues the verdict was against the weight of the evidence. Although the claim was preserved in a post-sentence motion, once again, the claim was non-specific. Nevertheless, the trial court understood the claim to reference Kimberly Jessie and Lakiesha Jessie both disavowing their signed statements to the police.[8] Our standard of review for a challenge to the weight of the evidence is, as follows:

_____

[7] Yates argued there was insufficient evidence to support the firearms convictions under section 6106 and 6108 because the Commonwealth failed to present any evidence of barrel length of the guns used in the shootings. *See Commonwealth v. Todd*, 384 A.2d 1215 (Pa. 1978) (barrel length is an essential element of the offenses defined in sections 6105 and 6106). Barrel length of a weapon is specifically part of the definition of a firearm found in Pa.C.S. § 6102. We note the definition of "firearm" has been amended regarding section 6105, and certain exceptions, not applicable herein, to section 6106. *See also*, *Commonwealth v. Gillespie*, 821 A.2d 1221 (Pa. 2003) (recognizing the definitional change as to section 6105 only). However, Yates did not raise this specific claim before the trial court and the trial court did not address the claim. Accordingly, it has been waived.

[8] At trial, Kimberly Jessie testified, "If you all ain't send those people to my mom's house, I never came here. [The Commonwealth sent police to Kimberly Jessie's residence to make certain she came to court to testify.] I just want to be over with this. I am done with it. I moved on with my life and my grandkids. I don't want to be bothered or talking about this anymore. I don't feel like they life-threatening to me or my children. I just want to leave." N.T. Trial, 1/21/2015 at 38.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* [**Commonwealth v.**] **Brown**, 648 A.2d [1177] at 1189 [(Pa. 1994)]. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

[**Commonwealth v.**] **Widmer**, 560 Pa. [308] at 321-22, 744 A.2d [745] at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

**Widmer**, 560 Pa. at 322, 744 A.2d at 753 (*quoting* **Coker v. S.M. Flickinger Co.**, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993)).

**Commonwealth v. Clay**, 64 A.3d 1049, 1055-56 (Pa. 2013).

Here, the trial court succinctly determined:

In the instant case, [Yates] and his co-defendant were immediately identified by the complainant and her sister as the shooters. Although both women testified differently at trial, evidence of the earlier statements made to police were presented and entered into evidence. The jury had the opportunity to observe these inconsistencies in testimony and was able to take this into account when deliberating. The fact that [Yates] and Co-Defendant were found guilty after all the evidence was presented was not contrary to the evidence or shocking to the conscience.

The jury is always free to determine which testimony to believe and how much weight to give testimony. Here, the jury chose to credit the statements of the complainant and her sister, and the testimony of the detectives investigating the case. The fact that the jury found [Yates] and his co-defendant guilty after weighing all the evidence does not shock one's sense of justice.

Trial Court Opinion, 6/17/2016, at 6-7 (citation omitted).

We have reviewed the certified record and find no abuse of discretion in the trial court's determination. Therefore, Yates is not entitled to relief on this issue.

In his third issue, Yates claims the trial court erred in providing an erroneous identification charge to the jury. Specifically, Yates argues the trial court misled the jury by suggesting Kimberly Jessie and Lakeisha Jessie had identified him as a shooter at trial.

Our review of a challenge to a jury charge is well settled:

"When reviewing a challenge to a jury instruction, we review the charge as a whole to ensure it was a fair and complete statement of the law." Trial courts possess great discretion in phrasing jury instructions so long as the law is clearly, adequately, and accurately presented to the jury. "[A] trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law."

- 10 -

*Commonwealth v. Towles*, 106 A.3d 591, 607 (Pa. 2014) (internal citations

omitted), *cert. denied*, 135 S.Ct 1494 (U.S. 2015).

The trial court initially instructed the jury as follows:

> Now, in their testimony, Lakeisha Jessie and Kimberly Jessie have identified the defendants as persons who committed the crime. In evaluating their testimony in addition to the other instructions I provided to you for judging testimony of witnesses, you should consider the following factors: Did the witness have a good opportunity to observe the perpetrator of the offense; was there sufficient lighting for them to make their observation; where (sic) they close enough to the individual to note their facial and other physical characteristics as well as any clothing they were wearing; have they made prior identification[s] of the defendant as perpetrator of these crimes or at any other proceedings; was their identification positive or was it qualified by any hedging or inconsistencies; during the course of this case did the witness identify anyone else as [a] perpetrator.

> In considering whether or not to accept testimony of Lakeisha Jessie and/or Kimberly Jessie you should consider all the circumstances under which the identification[s] were made.

> * * * *

> You cannot find defendant guilty unless you are satisfied beyond a reasonable doubt by all the evidence, direct and circumstantial, not only that the crime was committed, but that it was [the] defendant who committed it.

N.T., 1/28/2015, at 15-17. At the conclusion of the charge, the court

conducted a brief sidebar discussion with counsel, and then returned with the

following additional instructions concerning identification evidence:

> And as for the instruction I gave you regarding identification testimony by the witnesses that I mentioned to you previously, I want to make it clear that that instruction which starts off with "in their testimony the witnesses have identified the defendant as [the] person who committed the crime", that refers to the previous identification done to the police and statements that

were recorded by the police which were presented to the witness in court. And I'm referring to their previous identification.

That's what that instruction which deals with identification testimony that I read to you and it applies to the witness that I gave to you which previously were Lakeisha Jessie, Kimberly Jessie, and I believe, I just covered Lakeisha Jessie and Kimberly Jessie.

*Id.* at 29. After the jury retired for deliberations, Yates's attorney objected to the court's additional instruction, requesting the court specifically instruct the jury "there was no identification evidence presented from either of these two witnesses in court[.]" *Id.* at 32. Further, he complained the additional instruction was inadequate because it was up to the Commonwealth to prove "whether or not these women identified these two defendants as the doers," and that "the jury has now been instructed that [the witnesses] did in fact do that at some point." *Id.* Trial counsel for co-defendant Biggs joined in Yates's objection. *See id.* at 33. However, the court determined the instruction was proper. *See id.* at 35.

We find no reason to disagree with the trial court's ruling. Although the court initially misstated that Lakeisha and Kimberly had identified Biggs and Yates in their trial testimony, its additional instruction made clear that the witnesses identified Yates and Biggs only in their prior statements to police. The court had earlier instructed the jury that it could accept those prior inconsistent statements in judging the witnesses' credibility, and could "regard [that] evidence as proof of the truth of anything that the witness said in the earlier statement." *Id.* at 21.

- 12 -

Prior to deliberation, the trial court corrected its misstatement and accurately stated that both witnesses *had* identified Yates as a shooter prior to trial. Examined in the context of the entire jury charge, including the instruction regarding credibility and inconsistent statements, we find the court's charge "clearly, adequately, and accurately" presented the law to the jury, as required by **Towles**, **supra**. Accordingly, Yates is not entitled to relief on this issue.

In his final argument, Yates claims the trial court erred in announcing a stipulation to the jury, he had not agreed to. On January 22, 2015, the trial court informed the jury as follows:

> Ladies and Gentlemen, it has been agreed to among counsel regarding the issue locating the bullet or fragment that Officer Scott came out to the house two days later, as this witness [Dr. Rev. Della Jamison] has testified, and he was unable to find the bullet or bullet fragment at that time.

N.T. Trial 1/22/2015, at 91.

Although counsel for Yates objected to this "stipulation," in discussing the issue at sidebar, counsel indicated his argument regarding the bullet was as follows:

> And eventually instead [of] arguing no bullet, I'm going to argue they looked for it and didn't find it. That's all. And they didn't. The police didn't find it.

**Id**. at 88.

While counsel's intended argument appears to mirror the stipulation,[9] counsel objected. Over counsel's objection, the stipulation was announced to the jury. Assuming, arguendo, that the trial court erred in announcing a stipulation that was not specifically agreed to, Yates nonetheless fails to demonstrate prejudice. He argues he was prejudiced because,

> The Court allowed testimony with regard[] to the bullet entering into Ms. Jameson's home presumably to allow the Commonwealth to prove the intent to kill on behalf of the doers. This stipulation may or may not have swayed the jury to ultimately find that the doers had the intent to kill; that is because this particular evidence would clearly go to prove malice on behalf of the doers.

Yates's Brief at 28.

This argument is illogical. The "stipulation" merely noted that two days after the shooting, a police officer, following up on the report of a bullet coming through a window, could not find any bullet at that time. We cannot see how the stipulated inability to find a stray bullet demonstrates the "doers" were intent upon killing someone. Additionally, Yates has argued that the defense of this matter was one of identity – Yates denied he was one of the assailants. **See** Yates's Brief, at 26 ("The defense in the case was of identification, nor [sic] self-defense or another affirmative defense."). The "stipulated" fact did nothing to prejudice that defense.

---

[9] The trial court announced the "stipulation" in order to prevent any of the parties from inadvertently opening the door to the fact that a bullet fragment was found in Dr. Jamison's wall sometime later. The fragment had been previously ruled inadmissible.

Because Yates can demonstrate no prejudice, he is not entitled to relief on this issue.

In light of the foregoing, we find that Yates is not entitled to relief on any of his claims. Accordingly, his judgment of sentence must be affirmed.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/17