J-S29034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WALTER CHRISTIAN | : | |
| | : | |
| Appellant | : | No. 2297 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002328-2018

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED JULY 17, 2020**

Walter Christian (Christian) appeals from the judgment of sentence of 20 to 40 years' imprisonment imposed by the Court of Common Pleas of Philadelphia County (trial court) following his convictions of, among other offenses, two counts of robbery and one count of persons not to possess firearms. On appeal, he challenges the discretionary aspects of his sentence. After review, we affirm.

**I.**

The trial court concisely summarized the relevant facts as follows:

On October 25, 2017, during mid-afternoon, Ms. Francis Quinn and Mr. Michael Alston were working at Barto's Auto Body located on North Broad Street in Philadelphia, which Ms. Quinn owned, when [Christian] entered the establishment and expressed interest in purchasing a vehicle. Ms. Quinn showed him some

_____

[*] Retired Senior Judge assigned to the Superior Court.

vehicles for sale. After she did so, [Christian] appeared to leave the car lot, along with some employees and some customers who were present at the time because it was closing time, or so Ms. Quinn believed. She then went into her office and locked the door behind her. However, [Christian] had not left and knocked on the door to the business and asked Ms. Quinn, *inter alia*, if she could start a vehicle. [Christian] then appeared to have left the car lot again.

A couple of minutes later, [Christian] again knocked on the office door, which was kept locked for security reasons. Ms. Quinn, who was seated in her office and was speaking to Mr. Alston when [Christina] returned, unlocked the door because she believed that [Christian] had another question about a car. When she did so, [Christian] entered the office armed with a handgun, and pointed it at her. [Christian] then repeatedly threatened to kill her unless she gave him money that he thought was present on the premises. There was no cash on the premises and after again threatening to kill Ms. Quinn, [Christian] took a set of keys to Ms. Quinn's car that were hanging around her neck as well as with her cell phone and other items. [Christian] then got into Ms. Quinn's Mercedes and drove away.

Mr. Alston, who worked as a guard at the business, picked up a machete as [Christian] was pointing a gun at Ms. Quinn and threatening to kill her. [Christian] pointed the gun at him and threatened to kill him when he picked up the machete. Mr. Alston participated in a lineup and identified [Christian] as the person who robbed him and Ms. Quinn.

After [Christian] left the premises, Ms. Quinn called police, who arrived almost immediately, and gathered information about the incident from the two victims, which they broadcast over police radio. Shortly thereafter the police found Ms. Quinn's vehicle, which was running, and had it towed to a police garage to check it for fingerprints after Ms. Quinn, who had been driven to the location where the car was abandoned, positively identified the car as belonging to her. Ms. Quinn, who was not able to look inside the car before it was towed, noted that she left her pocketbook under the driver's front seat in the car. In it, she had money, credit cards, and prescription drugs. Her purse and the items in it were not recovered. After she identified her vehicle, Ms. Quinn provided a statement to police.

A fingerprint examination of Ms. Quinn's car yielded, *inter alia*, a single fingerprint identified as belonging to [Christian] inside the car by the glove compartment. When the police identified the fingerprint, they contacted Ms. Quinn and had her participate in a photographic identification session on November 20, 2017. During the session, she immediately selected [Christian's] photo and said that it depicted the person who had robbed her and Mr. Alston.

Trial Court Opinion (T.C.O.), 11/18/19, at 2-3.

In April 2019, a jury convicted Christian of two counts of robbery; carrying firearms without a license; theft by unlawful taking; possessing an instrument of crime; carrying firearms in Philadelphia; and two counts each of terroristic threats and simple assault.[1] In a bifurcated bench trial after the verdict, the Commonwealth presented evidence that Christian was convicted of rape in 1991 and, therefore, prohibited from possessing a firearm. Based on this, the trial court convicted him of persons not to possess firearms.[2]

At the sentencing hearing, Christian presented the testimony of his longtime fiancé. She testified that Christian has volunteered with her doing charity work in the community, as well as starting his own landscaping business in June 2017. Christian's counsel highlighted that despite having a serious criminal record as a juvenile and young adult, Christian had not been in trouble since 2002. Counsel asked that the court sentence Christian to

---

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 6106(a)(1), 3921(a), 907(a), 6108, 2706(a)(1) and 2701(a).

[2] 18 Pa.C.S. § 6105(a)(1).

concurrent sentences of 7 to 14 years' imprisonment on the robbery charges, with a consecutive 10 years' probation for any of the other offenses.

The Commonwealth, on the other hand, requested a sentence of 20 to 40 years' imprisonment. In support, the Commonwealth presented the testimony of both of the victims, including Francis Quinn, who is over 70 years old. Both victims testified to the trauma Christian caused them by pointing a gun and threatening to kill them. After their testimony, Christian exercised his right to allocution and maintained that he was innocent.

After hearing from Christian, the trial court made the following remarks:

> I will note for the record, Mr. Christian, I didn't find you guilty. A jury of your peers found you guilty beyond a reasonable doubt. I'm just wondering how a guy that comes from a good family, who comes with a good woman behind him, ends up with this record. I'm not talking about something that happened to you 29 years ago. I'm not talking about something that happened 15 years ago. I'm talking about something that happened to you on this particular date and this location. You had two people who said you walked into that car dealership with a gun, stuck a gun in their face, robbed them, and left with the Mercedes. You have independent evidence in this case, including fingerprints, your fingerprints, not somebody else's, inside the car that was taken. I don't find fault with anything that the jury said. What I find curious is the way you sit up here and you talk about the good woman behind you, who is a good woman, and your good family that's behind you, as a [repeat felon], and you express no remorse from what happened to Ms. Quinn or Mr. Alston on that particular date. What I am left with is somebody with a record, we don't need to rehash today, who was convicted by a jury of your peers of two gunpoint robberies.

N.T., 6/28/19, at 22.

Relevant to this appeal, the trial court determined that the deadly-weapon-possessed enhancement (DWPE) was applicable.[3]  Because his prior record score placed him in the repeat felony offender range, Christian's standard range guidelines for his robbery convictions were increased to 81 – 93 under the DWPE sentencing matrix.  The trial court imposed consecutive sentences of 7½ to 15 years' imprisonment for each robbery conviction, and a consecutive 5 to 10 years' imprisonment for persons not to possess firearms.  As a result, Christian's aggregate sentence was 20 to 40 years' imprisonment.[4]

After sentencing, Christian filed a timely post-sentence motion to modify sentence, arguing that the trial court's sentence was unduly harsh and excessive because it increased his guidelines on the robbery convictions through the DWPE, but then imposed a consecutive sentence for persons not

---

[3] The DWPE applies as follows:

> (1) When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17(a)).  An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:
>
> > (i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded[.]

204 Pa. Code § 303.10(a)(1)(i).

[4] The trial court sentenced Christian to concurrent probationary terms or imposed no further penalty on the remaining counts.

to possess firearms. In his view, this resulted in his possession of the firearm being "doubly, or triply, counted against [him] for a brief act [.]" After a hearing, the trial court denied the post-sentence motion. Christian filed this direct appeal.

## II.

On appeal, Christian argues that the trial court imposed an unduly harsh and excessive sentence under the circumstances. First, he claims that all of the offenses occurred simultaneously and were committed as part of a single criminal episode. Second, he reasserts his quasi-double jeopardy argument that imposing a consecutive sentence for the firearms offense was excessive because the possession was already used to increase the guidelines for the robbery offenses through the DWPE. Third, he claims that the trial court ignored his substantial mitigating evidence at the sentencing, including his charity work, employment history and family support. Finally, because he is 48 years old, Christian claims that his sentence is effectively a *de facto* life sentence. In his view, such a lengthy term of imprisonment is not the least restrictive sentence necessary to effectuate the aims of our sentencing laws.

Christian's arguments implicate the discretionary aspects of sentencing. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014). To

determine whether the appellant has invoked our jurisdiction, we consider the following four factors:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (citations omitted).

Instantly, Christian filed a timely appeal and preserved his sentencing issue in a timely post-sentence motion. He has also included a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Additionally, his challenge to the imposition of consecutive sentences as being unduly excessive, along with his claim that the trial court failed to consider mitigating factors, raises a substantial question. *See Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2015) ("This Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question."). Therefore, we address the merits of his claim.[5]

_____

[5] "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to

When the trial court sentences within the guidelines, we will vacate the sentence only when "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). In reviewing the record, we consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

On the merits, Christian is not claiming that the trial court misapplied the guidelines or sentenced him outside of them. Indeed, he does not challenge the application of the DWPE. Instead, he believes that the trial court's imposition of three consecutive sentences was unreasonable in light of, among other reasons, the mitigating evidence presented at sentencing that he did charity work, started his own business, and had family support.

However, because the trial court had the benefit of a pre-sentence investigation report, we presume that the trial court was aware of all of

---

the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 731 (Pa. Super. 2015) (quotation omitted).

Christian's mitigating evidence and weighed it along with any other mitigating factors. *See Commonwealth v. Seagraves*, 103 A.3d 839, 842 (Pa. Super. 2014). In fact, as quoted above in full, the trial court explicitly acknowledged and credited Christian's mitigating evidence, but simply determined that it was outweighed by Christian being a repeat felon offender who committed two gunpoint robberies—one of which was committed against a 70-year-old woman. Accordingly, the trial court committed no error in connection with its consideration of Christian's mitigating evidence.

We likewise find no error in the trial court imposing consecutive sentences for the robberies and persons not to possess firearms. As to consecutive sentences, "long standing precedent ... recognizes that [the Sentencing Code] affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005). We will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate" to the defendant's conduct, or "viscerally appear[s] as patently unreasonable." *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 599 (Pa. Super. 2010).

As to the consecutive sentences for the robberies, it does not follow—as Christian seems to believe it does—that he should get a reduction in sentence simply because the two offenses were committed close in time to each other.

That he pointed his gun and threatened to kill the two victims close together hardly minimizes the seriousness of his actions. This Court has long held that defendants convicted of multiple offenses are not entitled to a "volume discount" on their aggregate sentence. ***Commonwealth v. Foust***, 180 A.3d 416, 434-35 (Pa. Super. 2018) (citations omitted). The robberies were distinct crimes with distinct victims, both of who testified about the trauma caused by Christian's actions.

We also find no error with the trial court imposing a consecutive sentence for persons not to possess a firearm. Significantly, Christian does not argue that the trial court was precluded from imposing a consecutive sentence for persons not to possess firearms because it applied the DWPE to the robbery convictions. Indeed, robbery is not one of the enumerated offenses specifically precluded from application of the deadly weapon enhancement. 204 Pa. Code. § 303.10(a)(3).[6] Instead, Christian argues that the consecutive sentence for the firearms offense was excessive because his possession of the firearm was already utilized to increase his sentencing guidelines on the robbery sentences.

However, this argument fails to recognize that 18 Pa.C.S. § 6105 does not merely punish possession of a firearm; instead, it punishes the possession

---

[6] We note that violations of the Uniform Firearms Acts, which includes persons not to possess firearms, are specifically excluded from DWPE. 204 Pa. Code. § 303.10 (a)(3)(viii).

of a firearm by certain enumerated persons. **See Commonwealth v. Gillespie**, 821 A.2d 1221, 1224 (Pa. Super. 2003) ("The clear purpose of § 6105 is to protect the public from convicted criminals who possess firearms, regardless of whether the previous crimes were actually violent or the barrel of the firearm was a certain length."). As noted above, Christian was prohibited from possessing a firearm because he had been convicted of enumerated offense under § 6105(b), specifically, rape. Because he was an enumerated offender, his possession of the firearm constituted a distinct crime in and of itself from the robberies. The trial court acknowledged this in its Rule 1925(a) opinion, stating that Christian "[used] a firearm to threaten the lives of the two victims thereby blatantly ignoring the law prohibiting felons from possessing guns." T.C.O., 11/18/19, at 5. The court was free in its discretion to determine that Christian's possession of the firearm—as a convicted felon—warranted a consecutive sentence.[7]

Finally, we are unpersuaded by Christian's argument that the trial court's sentence is clearly unreasonable because he will possibly be incarcerated well into his 80s until reaching his statutory maximum. First, Christian will be, based on our calculation, 66 years old when he reaches his minimum sentence. We cannot agree that his sentence "affords him no

---

[7] We would also note that Christian's standard range sentencing guidelines for persons not to possess firearms was 72 – 84, meaning the trial court's sentence of 5 to 10 years' imprisonment was below the guidelines.

reasonable probability or a meaningful life thereafter." *Commonwealth v. Anderson*, 224 A.3d 40, 47 (Pa. Super. 2018).

Moreover, the trial court determined that the length of total confinement was warranted based on the protection of the public, the gravity of offenses and their impact on the victims, and the rehabilitative needs of the defendant. *See* 42 Pa.C.S. § 9721(b). In its Rule 1925(a) opinion, the trial court showed that it weighed these competing considerations:

> [T]he facts of the instant case, when viewed in conjunction with his prior criminal record and previous incarceration, showed that [Christian] was not amenable to rehabilitation and that he represented a threat to law-abiding citizens. [Christian's] actions also showed a complete disregard for the law and the citizens of Philadelphia, making it imperative for the safety of the community that he receive a lengthy sentence.

T.C.O. at 5-6.

Based on our review of the record, including all the considerations under 42 Pa.C.S. § 9781(d), we find that the trial court did not abuse its discretion in sentencing Christian to 20 to 40 years' imprisonment.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/20

- 12 -