J-S80033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL JOHNSON, | |
| Appellant | No. 2625 EDA 2017 |

Appeal from the Judgment of Sentence Entered August 2, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008265-2016

BEFORE:  BENDER, P.J.E., BOWES, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 15, 2019**

Appellant, Michael Johnson, appeals from the judgment of sentence of 2 to 4 years' incarceration, followed by 4 years' probation, imposed after he was convicted, following a non-jury trial, of robbery (threatening serious bodily injury), 18 Pa.C.S. § 3701(a)(1)(iv), possessing an instrument of crime (PIC), 18 Pa.C.S. § 907(a), and simple assault, 18 Pa.C.S. § 2701(a).  On appeal, Appellant seeks to challenge the weight and sufficiency of the evidence, as well as the discretionary aspects of his sentence.  Additionally, Appellant's counsel, James Lloyd, Esq., seeks to withdraw his representation of Appellant pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  After careful review, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

In Attorney Lloyd's ***Anders*** brief, he summarizes the evidence presented at Appellant's trial, as follows:

At trial, Joseph Compton testified that he was walking to a bar in Philadelphia on Friday, April 22, 2016[,] at approximately 7:30 p.m. Mr. Compton testified that he passed a blue GMC Envoy parked next to the sidewalk on Belgrade Street near Lehigh Avenue. The driver's side front window of the Envoy was rolled down. [Appellant], who was driving the Envoy, asked Mr. Compton if he could ask him a question. Mr. Compton replied, "Yes." [Appellant] then asked if Mr. Compton had any money. Mr. Compton relied, "No" and walked away from the Envoy. Mr. Compton testified that the man driving the Envoy then mumbled something.

Mr. Compton then testified that the Envoy drove forward and pulled up next to Mr. Compton. [Appellant] then told Mr. Compton to empty his pockets and give up his money or [Appellant] would shoot him. [Appellant] then reached toward his waistband and grabbed an object. Mr. Compton could not see if the object that [Appellant] pulled from his waist area was a gun, however, Mr. Compton testified that the object looked "gun like[,"] [Appellant] was motioning as if it were a gun, and [Appellant] threatened to shoot Mr. Compton. Based upon these factors, Mr. Compton testified that he believed that the object was a gun. However, Mr. Compton was clear in his testimony that he could not be certain that the object was a gun.

Mr. Compton testified that this encounter took place on a public street, underneath a railroad overpass, and that the area was dimly lit.

After [Appellant] demanded money, Mr. Compton reversed direction and walked back in the direction [from which] he [had come].… Mr. Compton did this because the Envoy was parked on a one-way street on which there was traffic coming. Accordingly, Mr. Compton walked against the flow of traffic and used the oncoming traffic and one-way street to prevent the Envoy from driving backwards in pursuit of him. As he walked away from the Envoy, Mr. Compton called 911 on his cell phone and reported the robbery attempt. Mr. Compton described the incident, the Envoy, and [Appellant]. While he was talking to the 911 operator, Mr.

Compton stated that he saw the Envoy turn onto Lehigh Avenue travelling westbound.

Mr. Compton stated that even though he thought [Appellant] had a gun, Mr. Compton did not believe that [Appellant] was going to shoot him - specifically, Mr. Compton testified that it was his "belief was that he [Appellant] wasn't going to make good on his threat" to shoot him.

At trial, Philadelphia police officer James Martin testified that he received the information provided by Mr. Compton over police radio. Officer Martin was travelling eastbound on Lehigh Avenue toward the scene of the attempted robbery when [Appellant] passed him in the Envoy travelling westbound on Lehigh [Avenue] approximately 9 blocks from the scene of the attempted robbery. Officer Martin stopped [Appellant] - who was alone in the Envoy - and detained him pending an investigation. Mr. Compton was brought to the location by another officer and identified both the Envoy and [Appellant].

Officer Martin recovered a black toy handgun from the backseat of the Envoy. Although the gun was a toy, it had no "orange cap" on it and, thus, [it] resembled a real gun.

At trial, [Appellant] testified in his own defense…. [Appellant] testified that he previously pled guilty to robbery - a crime of *crimen falsi*. [Appellant] testified that he worked with the City of Philadelphia as a mental health counselor. [Appellant] testified that he was driving his Envoy from a client's home to Episcopal Hospital to see another client when he encountered Mr. Compton walking on Belgrade Street near Lehigh Avenue. [Appellant] testified that Mr. Compton crossed against the light and [Appellant] honked at him. [Appellant] testified that Mr. Compton began cursing and screaming and tapped the hood of the Envoy.

[Appellant] testified that Mr. Compton then walked away from the Envoy. [Appellant] testified that the front driver's side window was partially down and [Appellant] began to mumble at Mr. Compton. [Appellant] testified that there was a toy black handgun on the backset of the Envoy. [Appellant] testified that this was the end of the encounter and that he did not attempt to rob Mr. Compton.

[Appellant] testified that after the encounter with Mr. Compton he drove to a gas station at a Wawa convenience store,

- 3 -

went to a PNC Bank ATM machine, withdrew money from the ATM, and then purchased gas at the Wawa on Aramingo Avenue in Philadelphia. [Appellant] testified that he then drove back toward the area where he encountered Mr. Compton on his way to the hospital to see a client for work. [Appellant] testified that he was then stopped by police approximately 30 minutes after encountering Mr. Compton.

The parties stipulated, however, that Mr. Compton called 911 at 7:29 p.m. and stated during that phone call that he had just been robbed and saw the Envoy turning onto Lehigh Avenue. The parties also stipulated that Officer Martin contacted police radio 9 minutes later at 7:38 p.m. to report that he had stopped [Appellant] in the Envoy approximately nine blocks from the location of the alleged attempted robbery. The parties also stipulated that another officer contacted police radio 6 minutes later at 7:44 p.m. to report that Mr. Compton identified [Appellant] and the Envoy.

The parties also stipulated that PNC Bank produced records relating to [Appellant's] bank account relating to all transactions on the day of the alleged attempted robbery. Those records indicated that [Appellant] did not withdraw money at an ATM following the encounter with Mr. Compton. The parties stipulated that the PNC records established that the only ATM withdraw from [Appellant's] account took place at 10:51 a.m. at a Wawa on Harbison Avenue in Philadelphia.

Also, the Commonwealth presented the testimony of Michael Faleski at trial as rebuttal evidence. Mr. Faleski testified that he is a supervisor at the agency that employed [Appellant] on the date of his arrest. Mr. Faleski was qualified to testify as a custodian of records for that agency and testified regarding his review of records relating to [Appellant's] employment on April 22, 2016. Mr. Faleski testified that [Appellant's] time sheets indicated that he worked from 8:30 a.m. to 5 p.m. on the day in question. Mr. Faleski testified that [Appellant] attended a team meeting at noon on that day. Mr. Faleski testified that [Appellant] would have worked from noon to 8:30 p.m. that day if he were assigned to night work. Mr. Faleski testified that two employees were assigned to night work each day. Mr. Faleski testified that [Appellant] was not one of the two employees assigned to night work on April 22, 2016.

Mr. Faleski testified that the agency had one client located at Episcopal Hospital on April 22, 2016. Mr. Faleski testified that [Appellant] was not the primary employee responsible for that client. Mr. Faleski testified that [Appellant] had last seen that client at Episcopal Hospital on April 12 or April 13, 2016. Mr. Faleski testified that there was no reason for [Appellant] to visit that client at Episcopal on April 22, 2016, found in the agency's records. Mr. Faleski testified that there was no record of [Appellant's] working after 5:30 p.m. on April 22, 2016.

Mr. Faleski testified that it was possible that a supervisor told [Appellant] to visit the client at Episcopal Hospital after 5 p.m. on April 22, 2016. However, Mr. Faleski testified that this would have typically been handled as an emergency call by the employees on the night shift and that there was no record of any emergency after[-]hours call on April 22, 2016.

At trial, [Appellant] testified in his own defense in sur-rebuttal … on March 23, 2017. [Appellant] testified that a supervisor who no longer works for the agency called him and told him to visit a client at Episcopal Hospital on April 22, 2016. [Appellant] testified that the time sheets from the agency were not accurate because he signed in and signed out at the same time every day regardless of what time he actually performed work. [Appellant] testified that he apparently signed out of work at 5 p.m. on April 22, 2016, but that he does not remember signing out and was still working when he was arrested at 7:38 p.m. Finally, [Appellant] testified that he was "a little confused" about what time he went to the ATM on April 22, 2016.

***Anders*** Brief at 10-17 (citations to the record omitted).

Based on this evidence, the court convicted Appellant of the above-stated offenses. On August 2, 2017, Appellant was sentenced to a term of 2 to 4 years' incarceration for his robbery conviction, and two years' probation for each of his other offenses. The probationary terms were imposed to run consecutively to each other, and consecutively to Appellant's incarceration sentence. Thus, Appellant's aggregate sentence is 2 to 4 years' incarceration, followed by 4 years' probation.

Attorney Lloyd explains that, at the sentencing hearing, Appellant's trial counsel orally sought leave to withdraw, which was granted. *See* N.T. Sentencing, 8/2/17, at 29-30. Attorney Lloyd was then appointed to represent Appellant. *Id.* at 29. After conferring with Appellant's prior attorney and Appellant, Attorney Lloyd decided not to file any post-sentence motions on Appellant's behalf. *Anders* Brief at 9. Instead, counsel filed a timely notice of appeal on August 15, 2017. In response to the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, Attorney Lloyd filed a Rule 1925(c)(4) statement of his intent to file an *Anders* brief and a petition to withdraw. On December 15, 2017, the trial court filed an opinion stating that it agreed with Attorney Lloyd's conclusion that "there are no meritorious, non-frivolous issues to raise on appeal." Trial Court Opinion, 12/15/17, at 1.

On July 23, 2018, Attorney Lloyd filed with this Court a petition to withdraw from representing Appellant. That same day, counsel also filed an *Anders* brief, discussing the following three issues that Appellant seeks to raise on appeal:

> [I.] Is the competent evidence of record legally sufficient to support the convictions in this matter?
>
> [II.] Was the verdict against the weight of the evidence to such a degree that it shocks one's conscience?
>
> [III.] Was the sentence imposed upon … [A]ppellant by the [trial] court manifestly excessive?

***Anders*** Brief at 6.[1]

Attorney Lloyd concludes that Appellant's issues are frivolous, and that he has no other, non-frivolous issues that counsel could pursue herein. Accordingly,

> this Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. ***Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).
>
> Prior to withdrawing as counsel on a direct appeal under ***Anders***, counsel must file a brief that meets the requirements established by our Supreme Court in ***Santiago***. The brief must:
>
> > (1) provide a summary of the procedural history and facts, with citations to the record;
> >
> > (2) refer to anything in the record that counsel believes arguably supports the appeal;
> >
> > (3) set forth counsel's conclusion that the appeal is frivolous; and
> >
> > (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> ***Santiago***, 978 A.2d at 361. Counsel also must provide a copy of the ***Anders*** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Nischan***, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

---

[1] We have reordered these issues for ease of disposition.

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014). After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then "conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

In this case, Attorney Lloyd's *Anders* brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's claims, and he sets forth his conclusion that Appellant's appeal is frivolous. He also explains his reasons for reaching that determination, and supports his rationale with citations to the record and pertinent legal authority. Attorney Lloyd also states in his petition to withdraw that he has supplied Appellant with a copy of his *Anders* brief. Additionally, he attached a letter directed to Appellant to his petition to withdraw, in which he informed Appellant of the rights enumerated in *Nischan*. Accordingly, counsel has complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issues are frivolous, and to ascertain if there are any other, non-frivolous issues he could pursue on appeal.

First, Appellant seeks to challenge the sufficiency of the evidence to sustain his convictions.

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant was convicted of robbery, which is defined, in pertinent part, as follows:

(1)    A person is guilty of robbery if, in the course of committing a theft, he:

***

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

18 Pa.C.S. § 3701(a)(1)(iv).

Appellant was also convicted of PIC. "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). "Instrument of crime" is defined, in pertinent part, as "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d).

Appellant's third offense, simple assault, is committed when a person "attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa.C.S. § 2701(a)(3). "Serious bodily injury" is defined as

- 9 -

"[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

In this case, Attorney Lloyd concludes that Appellant's sufficiency claims regarding these three offenses are frivolous for the following reasons:

> With respect to the robbery conviction, the facts favoring [Appellant's] sufficiency claim are: (1) nothing was taken during the incident, and (2) Mr. Compton admit[ted] he did not believe that [Appellant] would shoot him.
>
> The fact that nothing was actually taken is not fatal to the robbery conviction in the matter *sub judice*. Pennsylvania's robbery statute expressly provides that, "An act shall be deemed 'in the course of committing a theft' if it occurs in an **attempt** to commit theft[.]" 18 Pa.C.S.[] § 3701(a)(2) (emphasis supplied).
>
> To support a conviction for robbery in this case, the evidence must establish - in the light most favorable to the Commonwealth - that "in the course of committing a theft, he: [...] threaten[ed] another with [...] immediate bodily injury[.]" 18 Pa.C.S.[] § 3701(a)(1)(iv). The threat to shoot Mr. Compton, although not believed by the complainant, suffices to establish a robbery. This Court has previously explained that "[w]hen determining whether a victim has been placed in fear of serious bodily injury, this Court uses an objective standard; therefore, [the victim's] subjective state of mind during the robbery is not dispositive." **Commonwealth v. Kubis**, 978 A.2d 391, 398 (Pa. Super. 2009) (citation omitted). In other words, "this Court will look to the nature of the defendant's threats, and not the subjective state of mind of the victim." **Id.** (citation omitted).
>
> Accordingly, Mr. Compton's belief that [Appellant] would not follow through with his threat to shoot him is not fatal to the robbery conviction returned by the trial court.
>
> With respect to the conviction for [PIC], the fact supporting [Appellant's] sufficiency claim is that the police recovered only a toy gun from his car shortly after the incident. In **Commonwealth v. Brown**, 23 A.3d 544, 561 (Pa. Super. 2011), this [C]ourt was faced with the same claim and apposite facts. …

The gun that the appellant in **Brown** pointed at the complainant during a robbery turned out to be a toy. However, this Court held that the toy gun constituted an "instrument of crime" under the definition [provided in section 907(d)]. [**Id.**] The toy gun in **Brown** had tape on its barrel and had been colored with a black magic marker. **Id.** This Court found that that was evidence that the toy gun had been "specially adapted for criminal use." [**Id.**]

Even if the appellant in **Brown** had not altered the toy gun, this Court held unequivocally that "[t]he lawful uses of a toy gun do not include utilizing it in a robbery, particularly where it is obviously used to convey the impression that it is a real gun." [**Id.**] Thus, this Court in **Brown** concluded that the toy gun possessed by the appellant therein while he demanded money [was] sufficient to establish that he possessed [an] instrument of crime for the purpose of employing it criminally. [**Id.**]

Accordingly, the toy gun here (which had no orange cap on it when recovered by police) is sufficient under controlling decisional authority to sustain the conviction for [PIC] under the facts presented at trial in this matter.

Finally, with respect to the simple assault conviction, the fact favoring [Appellant's] sufficiency claim is that Mr. Compton admits he did not believe that [Appellant] would shoot him. … [S]ubsection [2701(a)(3)] of the simple assault statute does not require that the fear actually occur. Rather it criminalizes the attempt to place someone in such fear, notwithstanding the result of the threat. In the matter *sub judice*, the threat to shoot Mr. Compton could certainly place a reasonable person in fear of imminent serious bodily injury. The circumstances described by Mr. Compton are not consistent with a joke or someone who does not intend to carry through with the threat. The presence of a toy gun in [Appellant's] car, in conjunction with a demand for money on a dimly lit Philadelphia street at night[,] renders the context of this threat sufficient to support the misdemeanor conviction. The fact that Mr. Compton, curiously, did not believe that [A]ppellant would "make good" on the threat to shoot does not render the [evidence] legally inadequate under the circumstances of the case.

**Anders** Brief at 43-47.

Having reviewed the record and the case law relied upon by Attorney Lloyd, we agree with his conclusion that Appellant's sufficiency claims are frivolous.

Likewise, we discern no arguable merit to Appellant's second issue challenging the weight of the evidence to support his convictions. Initially, Appellant did not preserve his weight claim orally at trial or sentencing, or in a written pre- or post-sentence motion. Pa.R.Crim.P. 607(A) (directing that a claim that the verdict was against the weight of evidence must be raised before the trial court orally or in a written motion prior to sentencing, or in a post-sentence motion). Consequently, Appellant's challenge to the weight of the evidence is waived. *See Commonwealth v. Bryant*, 57 A.3d 191, 196 (Pa. Super. 2012) ("Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim.") (citation omitted).

In Appellant's third issue, he argues that his sentence is manifestly excessive. Again, we must deem this claim waived based on Appellant's failure to raise it at the sentencing hearing, or in a post-sentence motion. *See Commonwealth v. Bromley*, 862 A.2d 598, 603 (Pa. Super. 2004) ("It is well settled that an [a]ppellant's challenge to the discretionary aspects of his sentence is waived if the [a]ppellant has not filed a post-sentence motion challenging the discretionary aspects with the sentencing court.") (citation omitted). Notwithstanding waiver, Attorney Lloyd points out that the sentences imposed by the court for each of Appellant's three convictions were

***below*** the mitigated range of the sentencing guidelines. ***See Anders*** Brief at 29-30. Thus, it would be frivolous for Appellant to assert that the court imposed an excessive sentence, even had he preserved this claim for our review.

In sum, we agree with Attorney Lloyd that the three issues Appellant seeks to raise on appeal are either waived and/or frivolous. Additionally, our review of the record reveals no other, non-frivolous claims that Appellant could present herein. Consequently, we affirm his judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judge Bowes joins this memorandum.

Judge Nichols did not participate.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/19